Guy Gilbert Ribaudo, J.
By this summary proceeding the landlord seeks to evict the tenants, attorneys at law, from their offices, numbers 1424 to 1428, 55 West 42d Street, New York City. The tenants have occupied these offices since May 1, 1938, originally under a lease, but now as statutory tenants claiming protection in their occupancy by the Business Rent Law. (L. 1945, ch. 314, as amd.)
On June 20, 1957, the landlord entered into a lease with Norman H. Knapp Sales Corp. (hereinafter referred to as Knapp), a tenant occupying offices elsewhere in the same building. Under this lease, the landlord leased to Knapp for a period of 5 years and 10 months, commencing July 1, 1957, the offices occupied by the tenants. Following the execution of this lease, and on June 26,1957, the landlord served upon the tenants a notice demanding possession of the premises on or before June 30, 1957.
Paragraph Forty-second of the Knapp lease is as follows: “ Forty-second. That this lease is taken with the full understanding on the Tenant’s part that the demised premises are presently occupied by Louis B. Frutkin, Charles Stein and Julius Giller, as statutory tenants under the Emergency Business Space Rent Control Law, subject to the provisions of a certain lease dated March 23, 1938, between the Landlord hereunder, as Landlord, and Louis B. Frutkin, Charles Stein and Julius Giller, as Tenant (all of whom are hereinafter referred to as ‘ said occupants ’); that in the event said occupants, or the sub-tenants thereof, if any fail to vacate the demised premises prior to July 1, 1957, then and in such event, the Landlord will, at its expense, commence a summary proceeding reasonably promptly against said occupants and said subtenants, if any, under the provisions of Section 8(d) (2a) of the Emergency Business Space Rent Control Law, and prosecute same in good faith, in order to endeavor to obtain pos *200 session of the demised premises so as to deliver said premises to the Tenant hereunder subsequent to July 1, 1957; the Tenant hereunder agrees that in the event of the Landlord taking such legal steps, it will take possession of the demised premises as soon after such date as the Landlord is able to obtain possession of the demised premises legally. No rent will be charged under this lease until the Landlord secures possession of the demised premises and substantially completes the work specified in Paragraph Thirty-ninth of this lease ”.
Upon the trial it appeared that Knapp had occupied offices 1320 to 1321 for the past three years; that in January, 1957 Knapp required additional space and leased a noncontiguous office, No. 1326, on the same floor. Mr. Knapp testified that by reason of expanding business Norman H. Knapp Sales Corp. required additional space for its own immediate use; and that, thereupon, Knapp entered into the lease referred to above.
At the end of the landlord’s case, the tenants offered no evidence to controvert the testimony of Mr. Knapp but moved to dismiss the petition as a matter of law and requested a final order in their favor. Upon the testimony before the court, and the state of this record, the court holds that Knapp sought possession of the offices occupied by the tenants in good faith, and because Knapp required additional space for its own immediate use.
The substantial objection raised by the tenants is that this summary proceeding is not authorized under section 8 of the Business Kent Law, as amended. Indeed, the above-quoted provision of the Knapp lease calls for the commencement of this proceeding by the landlord relying specifically upon paragraph (2-a) of subdivision (d) of section 8.
By this amendment, section 8 now provides that no tenant shall be removed from his space, unless “ Possession is sought by a person who is the lessee or sub-lessee under a lease for a term of five years or more who seeks in good faith to obtain possession of the business space for his immediate and personal use, or possession is sought by such lessee or sub-lessee to give possession to another person who is a subsidiary corporation at least ninety per centum of whose stock is owned by such lessee or sub-lessee, and such lessee or sub-lessee seeks in good faith to recover possession of the business space for the immediate and personal use of such subsidiary corporation”. (L. 1957, ch. 452, § 3.)
In a very recent decision in this district of the court, it was said that the Legislature in adopting paragraph (2-a), intended *201 to limit its application only tp leases in existence at 'the time of the effective date of this amendment, that is, on or before April 12, 1957, and, conversely, that leases, though in all respects meeting the requirements of paragraph (2-a) made subsequent to April 12, 1957, were beyond its application. (Allied Graphic Arts v. Berhwit, 7 Misc 2d 777.)
This court respectfully differs with the dicta of Allied Graphic.
Chapter 452 of the Laws of 1957 was approved by the Governor on April 12, 1957; by section 7 of this chapter, the act took effect immediately except with respect to a new definition of emergency rent which became effective on July 1, 1957. Hence, the impact of the Allied Graphic decision is that any lease executed after April 12, 1957, though in all other respects in strict conformity with the precise language of paragraph (2-a), nevertheless, would be devoid of power to evict a statutory tenant. This conclusion was reached upon an interpretation of alleged legislative intent and a review of the development of amendments to the rent control laws. However, this court is constrained to hold to the contrary, and based upon the state of this record and the evidence adduced at the trial, must grant a final order to the landlord, despite the apparent hardship which may be suffered by the tenants.
Although Allied Graphic cautions against statutory “interpretations which may reach an illogic ” (p. 779), it appears to this court that the construction there placed on paragraph (2-a) is not only unrealistic but, in effect, strips paragraph (2-a) of all meaning and force. "Where, indeed, is the landlord, who, prior to April 12, 1957, would have the prophetic sense to know that a lease for five years or more, covering a statutory tenant’s space, would have, after April 12, 1957, a potential of eviction? And, further, that failing to have such happy faculty, a landlord who brings into existence a lease after April 12, 1957, though in all respects identical with the lease executed prior to April 12, 1957, would, unfortunately, be absolutely excluded from the impact of paragraph (2-a) ? Could it be that the Legislature meant by paragraph (2-a) to aid only landlords who prior to April 12, 1957, without reason or hope of possession under section 8, and contrary to the protective policy of the statute, highhandedly leased a statutory tenant’s space to another?
This court cannot believe that the Legislature conjured up the vision that leases are negotiated and entered into on such a thin and hazardous speculation; nor can this court believe *202 that the Legislature intended that paragraph (2-a) was to be twisted into nothingness on the judicial forge.[1]
The rule of construction of legislative enactment is that a statute be read and given effect as it is written by the Legislature. The court may not in the face of clear language, substitute its concept of what should or would have been written if all the problems and complications had been foreseen in the course of the application of the statute. (Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639.)
To interpret, where there is no need for interpretation; to conjecture about, or to add to, or to subtract from words having a definite and precise meaning (Matter of Rathscheck, 300 N. Y. 346, 350; Matter of Deth v. Castimore, 245 App. Div. 156, 159); to engraft exceptions where none exists (Jackson v. Citizens Cas. Co., 252 App. Div. 393, 396) — are trespasses upon legislative domain.
Section 8, from the very first, set forth the grounds for recovery of possession from a statutory tenant. Time and again legislative committees, as well as the courts, have stated that emergency legislation can find sanction only in the continuing existence of that emergency. With changing conditions these controls were to be relaxed until ultimately they would disappear entirely. (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 420; Orinoco Realty Co. v. Bandler, 233 N. Y. 24, 29; N. Y. Legis. Doc., 1949, No. 52, p. 18; N. Y. Legis. Doc., 1951, No. 53, pp. 10, 16; N. Y. Legis. Doc., 1952, No. 61, pp. 9, 10; N. Y. Legis. Doc., 1953, No. 43, pp. 12, 22; N. Y. Legis. Doc., 1954, No. 58, p. 11; N. Y. Legis. Doc., 1956, No. 57, p. 9; N. Y. Legis. Doc., 1957, No. 22, p. 11.)
Thus, the Commission to Study Bents and Bental Conditions, in its 1955 report to the Legislature, stated: “ It is remarkable that none of those who testified seemed' to understand the *203 purpose of the emergency laws. The only reason why such laws can be justified is the existence of a proved emergency and not the state of business, the level of profits or that ' landlords are making enough.’ The declared and only purpose of the statutes was the housing of business and commercial tenants in a period of emergency threatening the health, welfare and safety of the people of the state and to stay the exaction of excessive rentals by some landlords when such space was insufficient to supply the need. No other purposes will sustain such laws.” (N. Y. Legis. Doc., 1955, No. 75, p. 15.)
In like manner, the Court of Appeals has held that rent controls ‘ ‘ ought not to achieve a status of permanence in economy. They have no justification except in periods of emergency ’ ’. (Lincoln Bldg. Associates v. Barr, supra, p. 420.)
Because of the commission’s conviction that the intent of the Legislature at times was being frustrated by the courts, in its 1957 report it forcefully stated that the time had now come when effective judicial action should be given to clearly expressed relaxation of controls. (N. Y. Legis. Doc., 1957, No. 22, pp. 18-19.) Such a positive expression of legislative intent cannot be ignored; it guides the court in the judicial construction of the statute as amended. (Frankfurter and Landis, The Business of the Supreme Court at October Term, 1930, 45 Harv. L. Rev. 271, 301 et seq.)
It is in this background that the application of amendments to section 8 must be examined.
In the context of the statute, paragraph (2-a) follows paragraph (2) of subdivision (d) of section 8 and is in almost identical language; paragraph (2) refers to possession being sought by a holder of a twenty-one year lease of an entire building; paragraph (2-a) refers to possession being sought by a holder of a lease for five years or more.
Shortly after paragraph (2) was adopted in 1950 (L. 1950, eh. 327) complaints of hardship were made by tenants and, in fact, reached the Court of Appeals in the case of N. R. M. Garage Corp. v. Morris Feig Garage Corp. (303 N. Y. 922, affg. 279 App. Div. 126 [1st Dept.]).
On March 31, 1950, paragraph (2) became effective. In July, 1950, N. R. M. Garage Corp. was created and the lease in question was executed on July 31, 1950. Prior to its date of incorporation it had never engaged in the garage business, nor, for that matter, in any business. The statutory tenant had operated a garage on the premises for 25 years and complained bitterly that in effect the new lessee who sought the eviction *204 order, would not only take possession of the premises, but also would appropriate the good will which the statutory tenant had built up over 25 years with respect to the operation of a garage at the demised premises. There could hardly have been a set of facts more appealing from the point of view of hardship. (See, dissenting opinion, N. R. M. Garage Corp. v. Morris Feig Garage Corp., supra, p. 134.) Nevertheless, the Municipal Court, the Appellate Term, the Appellate Division, and, finally, the Court of Appeals held that a final order ousting the statutory tenant was in all respects in accordance with the statute. The lease relied upon by N. R. M. Garage was not in existence on the effective date of the enactment of paragraph (2). Nevertheless, this fact, though specifically brought to the attention of the Court of Appeals, was given no weight. [2] . The object of the Legislature in amending the statute by including paragraph (2) was stated to be to put a lessee of an entire building for 21 years in a similar position to that of the owner of the fee for this purpose. (N. Y. Legis. Doe., 1950, No. 49.)
The very same object is stated in the Legislative Report of 1957 (N. Y. Legis. Doc., 1957, No. 22) to be the basis for the enactment of paragraph (2-a). Here, too, the purpose of the amendment was to confer upon a lessee the rights of an owner of the building where in good faith the lessee requires additional space. Thus, the parallel between paragraphs (2) and (2-a) is manifest in language and in intent — there should be no difference in judicial construction. The dissenting opinion of Mr. Justice Dore in N. R. M. Garage was emphatic in its assertions of patent hardship which would result from the majority ruling. Nevertheless, the Court of Appeals affirmed without opinion the determination of the majority. Though years have passed, the Legislature has not questioned the propriety of this decision. Hardship upon an individual statutory tenant who falls within the decontrolled aspects of rent legislation must not lead the court to substitute its views for the clear language of legislative enactment. (Lincoln Bldg. Associates v. Barr, 1 N Y 2d 413, 415, supra.)
The tenants complain that if paragraph (2-a) is given effect in accordance with its plain language, the statute will be emasculated, and rent control will be at an end, contrary to the expressed policy of the Legislature.
*205 Such has been the hue and cry following each step along the road to relaxation of controls. (See reports by commission to the Legislature, supra.)
It is obvious that such is not the case here. Leases of five years or more are the requisite as well as a good faith lessee searching for additional space in the same building. Whether a good faith lessee will enter into a lease for five years or more to obtain additional space, is a matter of bargaining between him and the landlord. Absent a clearly declared legislative policy within constitutional limitations, unfettered bargaining is the optimum of a free society and the declared legislative policy of this State.
The tenants claim, too, that paragraph (2-a) of subdivision (d) must be read together with subdivision (kk) of section 8. Section 8 sets out many grounds for the recovery of possession from a statutory tenant. The language of subdivision (kk) specifically makes reference to a “ prospective tenant ’ ’, and to a rental area of at least one floor; paragraph (2-a) refers to a lessee who seeks additional space. (N. Y. Legis. Doc., 1957, No. 22, p. 26.) In no way does the legislative report link together paragraph (2-a) with subdivision (kk). If such a connection were intended, it could have easily been set forth. (Matter of Kalina, 184 Misc. 367, 372, appeal dismissed 270 App. Div. 761.)
It is also suggested that this construction of paragraph (2-a) will repeal in part subdivision (kk), in that the space mínimums there set forth would no longer apply with respect to lessees already tenants of the building at the time of the execution of the five-year lease. A reading of paragraph (2-a) and subdivision, (kk) manifests some apparent conflict, but the difficulty is not with the language of paragraph (2-a). Many situations could give rise to apparent inconsistencies in the application of various parts of section 8,[3] but this alone does not warrant a strained interpretation of any particular part. However, the genesis of subdivision (kk) establishes no real conflict. The *206 comment of the commission[4] as well as the language of subdivision (kk) as amended, sets up this part of section 8 to authorize judicial action in favor of large users of business space vis-a-vis smaller tenants, despite the hardship upon smaller tenants. The purpose for its creation and the reasons for its subsequent amendment show that subdivision (kk) was to apply to special situations of the type described by its precise formulation. It appears but natural and logical that since a ‘ ‘ prospective lessee ’ ’ has the privileges referred to in subdivision (kk) the same should not be denied to a large user merely because he already is an occupant of the building. This is but a reasoned outgrowth from the basic concept with respect to users of large rental areas. But because of this inclusion, it does not follow that subdivision (kk), and subdivision (kk) alone, shall be the sole and exclusive vehicle whereby possession of space within a building may now be obtained.
The court must read the plain language of paragraph (2-a) as it finds it (Matter of Colonial Liquor Distrs. v. O’Connell, 295 N. Y. 129, 141; see Matter of Daniman v. Board of Educ., 306 N. Y. 532, 541, 543, 544) and not as if paragraph (2-a) were inserted after or made a part of subdivision (kk).
The court does, therefore, hold that possession is here sought in good faith by a lessee who requires additional space occupied by statutory tenants within the terms of paragraph (2-a).
The tenants assert that the above-quoted provision of the Knapp lease reflects upon the good faith of Knapp and in fact is no lease at all. A similar provision was in the lease in the N. R. M. Garage Corp. (279 App. Div. 126, supra) except that the burden of bringing the summary proceeding was on the lessee. Indeed, this provision, openly declaring the avowed purpose of the landlord to seek possession under the statute, cannot, as a matter of law, be conclusive of bad faith. To the contrary, it constitutes no more than a prudent caution in the face of anticipated litigation.
With respect to tenants’ claim that this provision taints the Knapp lease under the rent control statute as being no lease or one for less than five years, N. R. M. Garage (supra), holds to *207 the contrary. (Cf. dissenting opinion, N. R. M. Garage, supra, p. 134; also dissenting opinion, 10 Misc 2d 216.)
Good faith, the springboard for the possessory relief under section 8, must be established as a fact. This is a statutory safety valve; one which the courts have long used, and about which there is a wealth of judicial experience. (N. R. M. Garage Corp. v. Morris Feig Garage Corp., supra.) The facts of each case can be scrutinized, analyzed, examined — and decision made. (E.g., though Allied Graphic [7 Misc 2d 777, supra] discusses much of interest, the decision is bottomed on the absence of immediate and personal use.) Nowhere has the Legislature circumscribed judicial inquiry into this requisite for possession. Many, if not all, of the imagined abuses and dire consequences will be laid bare by cross-examination and trial — therein lies the area of judicial force and function.
Tenants offered no evidence showing bad faith on the part of Knapp; tenants were satisfied to have this proceeding determined upon the evidence offered by the landlord. This evidence sufficed to establish the good faith required by the statute. Unless the tenant meets the landlord’s prima facie showing of good faith, the landlord must prevail. (150 Central Park South v. Ritz Carlton Service, 276 App. Div. 214; Ukrainian Nat. Home v. Ross, 136 N. Y. S. 2d 502; H. W. Perlman Corp. v. All-American Sportswear Co., 75 N. Y. S. 2d 2; Travelers Ins. Co. v. Alan H. Bonito & Co., 87 N. Y. S. 2d 234; Priedlander and Curreri on New York State Kent Control [1950], p. 127.)
The tenants also urge that the landlord is not the party to maintain this proceeding and that thereby its petition is jurisdictionally defective. It is well settled that a landlord may maintain summary proceedings to remove a holdover tenant though he has executed a new lease to commence at the expiration of the term of the holdover tenant. (Eells v. Morse, 208 N. Y. 103; 3 New York Law Landlord & Tenant, § 1111, p. 285 and cases there cited.) This right to institute summary proceedings is in no way affected or curtailed by the unnumbered penultimate provision in the statute following subdivision (m) of section 8, which permits anyone upon whom the rights of an owner are conferred by the control statute to institute and maintain a summary proceeding.
The other arguments raised by the tenants go to the issue of good faith. The court cannot hold as a matter of law that the circumstances referred to by them constitute bad faith. Upon the state of this record a finding of bad faith would be contrary to the evidence.
*208 The motion to dismiss the proceeding is denied. Final order granted for the landlord.
Issuance of warrant stayed to and including December 31, 1957.

. Mr. Justice Jackson has uttered biting comment on this proclivity: “I should concur in this result more readily if the Court could reach it by analysis of the statute instead of by psychoanalysis of Congress. When we decided from legislative history, including statements of witnesses at hearings, what Congress probably had in mind, we must put ourselves in the place of a majority of Congressmen and act according to the impression we think this history should have made on them. Never having been a Congressman, I am handicapped in that weird endeavor. That process seems to me not interpretation of a statute but creation of a statute. * * * It pulls federal law, not only out of the dark where it has been hidden, but into a fog in which little can be seen if found. Legislative history here as usual is more vague than the statute we are called upon to interpret.” (United States v. Public Utilities Comm., 345 U. S. 295, 319-320.)

. Appellant’s brief to the Court of Appeals also urged that paragraph (2) did not embrace leases made after its enactment. (N. R. M. Garage Corp. v. Morris Feig Garage Corp.)

. Suppose statutory tenant occupies part of floor at an emergency rental of $10,000 per year and landlord elects without notice to statutory tenant to enter into a five-year lease under subdivision (kk) -with tenant occupying twice as much space in the building as the statutory tenant; could not the statutory tenant complain that his eviction violates the spirit and letter of paragraph (2) of subdivision (gg) because landlord to get possession of tenant’s space under paragraph (2) of subdivision (gg) must first offer to the tenant a lease and the tenant must refuse or neglect to accept such offer, while under subdivision (kk) no such offer need be made and the tenant can be evicted without any opportunity to execute a new lease.

. “ The history of the past several years of emergency rent and eviction controls is replete with instances of large business enterprises leaving New York City because of a failure to enlarge existing rental space needed for expansion or by businesses requiring large areas of connected space to accommodate their needs in order to establish a main office or headquarters in New York. These failures represent substantial losses in employment and taxes to both the City and the State.” (N. Y. Legis. Doc., 1953, No. 43, p. 22.)