OPINION OF THE COURT
Fred A. Dickinson, J.
At issue before this court is whether the instant proceeding has been timely commenced.
*800 The general biennial election of the Village of Cold Spring was held on March 19, 1991. This special proceeding under the Election Law was commenced by order to show cause on March 27, 1991 by service on respondent candidates Phillips and Chirico, on Frances Allen as Village Clerk on March 28, 1991, and by service on the Putnam County Board of Elections (BOE) on March 29, 1991.
The office at issue herein is that of Mayor, the term of which expired on March 31, 1991. A stay was issued preventing respondent Chirico from assuming the duties of his office. The order to show cause was made returnable on the Motion Calendar of April 2, 1991, at which time papers were to have been submitted. All parties have appeared save respondent Phillips.
The court, after having reviewed the papers submitted by the BOE raising a jurisdictional question, gave the parties appearing until 5:00 p.m. on April 3, 1991 to submit additional papers directed at this question. Petitioner Garufi and Clerk Allen submitted such additional papers.
The court, after considering the papers submitted by the various parties, and after weighing the testimony contained therein, finds the following facts:
1. The Cold Spring village election was conducted by the Village Clerk pursuant to Election Law § 15-124, as the Village Board of Trustees never voted to have its elections conducted by the County Board of Elections under Election Law § 15-104 (1) (c).
2. On March 19, 1991, at the conclusion of the voting, the vote tally for the various mayoral candidates on the single election machine used was as follows: Line Al — Roger Chirico, 233; Line B1 — Blank, 19 (a lock to prevent the casting of ballots on this line having become dislodged); Line Cl — Antonia Garufi, 222; Line D1 — Anthony Phillips, 190.
After the canvass of the machine votes the nine absentee ballots received, which number corresponded to those requested and sent, were cast and canvassed. The results of those absentee ballots were as follows: Roger Chirico, 2; Antonia Garufi, 2; Anthony Phillips, 5. The vote total for the candidates was thus 235 for Chirico, 224 for Garufi, and 195 for Phillips.
3. On March 20, 1991, the Village Clerk requested that the BOE inspect the voting machine and canvass the vote thereon. No candidate requested a recanvass.
*801 4. The BOE may or may not have recanvassed the absentee ballots. This, however, is not necessary to a decision by this court, as no written transmittal of the results of the recanvass was ever made, although the results of this recanvass may have been made known generally to the candidates.
5. Upon the results of the recanvass, the Village Clerk sent a letter on March 20th to all village election candidates, stating that void ballots were cast on line B1 and that prospective voters were turned away, but did not otherwise communicate the numerical results as may have been determined by the Board of Elections.
6. On March 21, 1991 the Village Clerk sent to respondent Chirico a notice in conformity with Election Law § 15-126 (3) and § 15-128 stating he had been elected as Mayor.
THE TIMELINESS OF THIS ACTION
The BOE contends, as a third affirmative defense, that Election Law § 15-126 (3) applies to this action. That section, in relevant part, states: "Judicial review as provided by this chapter must be commenced no later than three days after the completion of the recanvass by the board of elections. Upon completion of the recanvass, the county board of elections shall notify the village clerk of the result.”
The Board contends that, because this action was commenced at the earliest on March 27th, it is untimely because the recanvassing was completed on March 20th. Accordingly, the action should have been commenced by March 23rd.
Petitioner Garufi contends, however, that she had 10 days from the date of the village election to commence this action under Election Law § 16-106 (5). That section states as follows: "A proceeding under subdivisions one and three of this section must be instituted within twenty days and under subdivision two, within thirty days after the election or alleged erroneous statement or determination was made, or the time when the Board shall have acted in the particulars as to which it is claimed to have failed to perform its duty, except that such a proceeding with respect to a village election must be instituted within ten days after such election, statement, determination or action.”
The court has raised the issue with the parties whether the amendment to section 16-106 (5) (L 1989, ch 359, § 29) was intended to apply only to village elections conducted by the County Board of Elections.
*802 Petitioner Garufi has submitted an affidavit by one Thomas J. Spargo, former counsel to the Senate Elections Committee, stating that this 10-day provision was intended to apply to all village elections, and was not intended to repeal Election Law § 15-126 (3), as that latter statute could control in certain circumstances.
THE STATUTORY CONSTRUCTION OF ELECTION LAW § 16-106 (5)
"The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a] [1971].) Extrinsic material is to be considered only where a statute is ambiguous. (Op. cit., § 120.)
As a threshold matter, the court must determine how much weight to accord the Spargo affidavit.
Although at least one lower court has given deference to an affidavit submitted by counsel to a legislative committee (see, People v Knight, 138 Misc 2d 78 [County Ct, Monroe County 1988]), the appellate departments have taken a different tack. "Regardless of the contents of any memorandum written by a drafter of legislation, the legislation stands for what its words manifest and not the inner thoughts of a draftsman * * *. This is especially true because ' "there is no necessary correlation between what the draftsman of the text of a bill understands it to mean and what members of the enacting legislature understand” ’ ” (Matter of Daniel C., 99 AD2d 35, 41 [2d Dept], stay denied 61 NY2d 1025, affd 63 NY2d 927 [1984]). "The postenactment statements of a member of the Legislature, even one who sponsored the law in question, are irrelevant as to the law’s meaning and intent”. (McKechnie v Ortiz, 132 AD2d 472, 475 [1st Dept 1987], appeal dismissed 71 NY2d 873, affd 72 NY2d 970 [1988]). "[P]ostenactment statements or testimony by an individual legislator, even a sponsor, is irrelevant and was properly excluded. This postenactment rule does not apply, however, when such testimony might be appropriate in extraordinary circumstances, such as when the constitutionality of a particular measure is challenged and the existence of a discriminatory purpose, or motivation, becomes relevant”. (Civil Serv. Employees Assn. v County of Oneida, 78 AD2d 1004, 1005 [4th Dept 1980], lv denied 53 NY2d 603 [1981].) No such extraordinary circumstances are presented in this case, and the court accordingly excludes the Spargo affidavit.
*803 Moreover, apart from its irrelevance, the Spargo affidavit is illogical. Although paragraph 6 of the Spargo affidavit states that "no attempt was made to repeal the three day limitation period of § 15-126 at subdivision 3, because the 3 day period was not inconsistent with the newly adopted 10 day period of subdivision 5, but would merely expand such 10 day period in the event that a canvass was completed outside the 10 day limitation period of 16-106”, this is not what the statute itself says. Section 16-106 (5) states that such an action must be commenced within the 10-day period. Generally speaking, "[i]n the absence of anything to indicate a contrary intention, words of command in a statute are construed as peremptory, and words of discretion are treated as permissive.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 177 [a].) The word "must” is construed by this court to be peremptory, and has to be given effect. (Op. cit, § 231.) Because, under certain circumstances, an action could be commenced under Election Law § 15-126 (3) in excess of the 10 days, and because Election Law § 16-106 (5), if given the effect stated in the Spargo affidavit, would reduce that time to a flat 10 days, this would result in a repeal by implication of Election Law § 15-126 (3). Repeals by implication are not favored (McKinney’s Cons Laws of NY, Book 1, Statutes § 391), unless the two statutes are impossible to reconcile. (§ 398.)
The amendment to Election Law § 16-106 (5) was adopted as part of Laws of 1989 (ch 359). Chapter 359 was entitled "An Act to amend the election law and the county law in relation to village elections and repealing certain provisions of the election law relating thereto”. One of the primary purposes of the act was to provide a mechanism by which village elections could be conducted by the County Board of Elections, and the chapter enacted seven new sections of the Election Law specifically aimed at this purpose. (See, L 1989, ch 359, § 19, adding Election Law §§ 6-200 — 6-212.) Indeed, a review of chapter 359 indicates that the following sections concern the differentiation between village elections conducted by the village and village elections conducted by the Board of Elections: sections 3, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 18, 19, 20, 22, 23, 24, 25, 26, 28.
Section 27 of chapter 359 amended Election Law § 15-100 to provide that "provisions of this article not inconsistent with other provisions of this chapter shall apply to such [village] elections”. Section 29, as stated above, amended section 16-106 (5) to provide that a "proceeding with respect to a village *804 election must be instituted within ten days after such election, statement, determination, or action”.
As discussed above, a reading of section 16-106 (5) as urged by petitioner, would be inconsistent with the provisions of Election Law § 15-126 (3). This result must be avoided.
Twenty of the 30 sections of chapter 359 deal specifically with the differentiation of village elections conducted by the village or those conducted by the Board of Elections. "A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent.” (McKinney’s Cons Laws of NY, Book 1, Statutes §97 [1971].) "The general rule that repeals by implication are not favored is applied with particular force between two statutes passed at the same session of the Legislature.” (Op. cit., § 393.)
Turning to the text of the amendment to Election Law § 16-106 (5), the 10-day provision explicitly applies to actions within the meaning of Election Law § 16-106 (2). That section reads as follows: "The canvass of returns by the state, or county, city, town or village board of canvassers may be contested, in a proceeding instituted in the supreme court by any voter, except a proceeding on account of the failure of the state board of canvassers to act upon new returns of a board of canvassers of any county made pursuant to the order of a court or justice, which may be instituted only by a candidate aggrieved or a voter in the county.” (Emphasis supplied.)
Laws of 1989 (ch 359, § 23) amended Election Law § 9-204 by mandating that the Board of Elections of each county or city shall "also be the board of canvassers of villages in which village elections are conducted by the board of elections”. (Emphasis added.) This is reinforced by the 1990 amendment to Election Law § 9-212, providing that County Canvassing Boards shall determine each person elected to a village office.
Prior to chapter 359, section 16-106 (5) did not apply to village elections. The recent amendments defining the Board of Elections as the Board of Canvassers for village elections which are conducted by the Board of Elections is dispositive of this question. The County Board acted as a board of recanvassers in this election. Construing the various sections of chapter 359 together, as this court must, the court is of the opinion that the amendment to Election Law § 16-106 (5) applies only to village elections conducted by the County Board of Elections. Accordingly, the 10-day provision is not applicable in the instant case.
*805 This, however, does not end the matter.
THE RECANVASS OF THE BOARD OF ELECTIONS
This court is vested with summary jurisdiction with respect to village elections. (Election Law § 15-138.) For purposes of this decision, such judicial proceedings must be instituted within three days after a requested recanvass of the votes by the Board of Elections is given to the Village Clerk. (Election Law § 15-126 [3].)
Where no candidate requests a recanvass, a Village Clerk may nevertheless request such recanvass. (Id.) Clerk Allen, although not specifically requesting a recanvass as such, asked the BOE to examine the only voting machine the day following the election. The BOE thereupon verified the votes of the machine. The Clerk denies that absentee ballots were recanvassed, although the Board of Elections’ affidavit reflects a vote total on the machine that includes the absentee ballots cast.
The court is of the opinion that the BOE conducted a recanvass of the votes cast within the meaning of Election Law § 15-126 (3). Although the Board may not have completed the recanvass properly, this is of no moment because, in any event, no written notice of the recanvass was ever transmitted to the Village Clerk.
"If there is to be adequate judicial review, then the time within which to apply for such review cannot commence to run prior to the time that the decision of the board of elections is communicated in accordance with the requirements of the Election Law. Were it otherwise, and were there no requirement for communication of the result of the board’s activity, the three-day period could run before any party could determine that he was aggrieved by the decision and whether a judicial review would be necessary.” (Matter of Davis, 103 Misc 2d 786, 788 [Sup Ct, Orange County 1980].)
The Davis court, in construing the recanvass proceedings specified in Election Law § 9-208 (2) and (3), which it found to be consistent with the village Election Law, ruled that such communication had to consist of a statement in writing. (Supra, at 789.)
Similarly, in Matter of Carberry v Carberry (131 Misc 2d 727, 733 [Sup Ct, Rockland County 1986]), it was found that Election Law § 9-210 was not inconsistent with the village Election Law pursuant to Election Law § 15-100, and required that a *806 recanvassing statement was similar to a canvassing statement and had to be in writing, setting forth all votes cast for all candidates for each office, the name of each candidate, the number of votes that were cast for each candidate, and be certified as correct over the signatures of the members of the Board. This procedure was not followed in the instant case, and consequently the three-day time limitation never commenced running.
This does not mean that, in absence of a proper recanvass, a candidate has unlimited time to commence a proceeding with respect to a village election. Once a candidate is notified that he or she is elected pursuant to Election Law § 15-128, and files his or her oath of office and commences his or her elected duties, the Supreme Court is ousted from jurisdiction under Election Law § 15-138 and the only method to try title to the office is by a plenary proceeding of quo warranta to be commenced by the Attorney-General under Executive Law § 63-b. (Matter of Conroy v Levine, 62 NY2d 934 [1984].) Thus, any proceeding would have to be commenced prior to expiration of the term of office which is contested.
The instant proceeding, having been commenced at the latest March 29, 1991 for a term of office expiring March 31st, is consequently timely and the court has jurisdiction.
[Portions of opinion omitted for purposes of publication.]