OPINION OF THE COURT
John P. DiBlasi, J.
Local Law No. 10 (1970) of Westchester County (Westchester *446 County Laws § 107.31 [4] [hereinafter Local Law 10]) provides that:
“A county legislator shall not hold any other salaried or elective public office during his tenure.” (Emphasis supplied.)
At issue in this proceeding is whether Local Law 10 bars a recently elected County Legislator from serving on the Westchester County Board of Legislators (the County Board) while retaining his position as the Chief of Police of the Town of Harrison.
Now before the court for determination is a motion filed by plaintiffs seeking a preliminary injunction barring defendant from exercising the full powers of County Legislator, and most importantly, his voting power, pending the final outcome of this lawsuit. Upon consideration of the papers presented by the parties on that motion, as well as on defendant’s cross motion for dismissal of the complaint, the court grants the preliminary injunction sought by plaintiffs.
I. Relevant Factual Background
Since. 1997 defendant has been the Chief of Police of the Town of Harrison Police Department (the HPD). In that capacity he supervises the law enforcement efforts of the officers of the HPD. It is undisputed that part of the funding for the HPD is provided under the operating budget of the County of Westchester, which is voted upon by the County Board.
In November 2001 defendant successfully ran as a candidate for the elected position of County Legislator, representing District 6, which includes the Town of Harrison and the Villages of Port Chester and Rye Brook. Both before and since his election, defendant has expressed the view that he intends to hold his position as Chief of Police of the HPD while he serves as County Legislator.
Later in November 2001, the Westchester County Board of Elections (the Board of Elections) certified that defendant had won the election for the County Legislator position. On or about December 3, 2001, defendant executed and filed his oath of office as a member of the County Board.
Relying upon Local Law 10, on or about December 21, 2001 plaintiffs commenced this lawsuit in which they seek a judgment declaring that defendant may not serve as a County Legislator “while he also holds a salaried public office as the Police Chief of the Town/Village of Harrison” (complaint at 6). *447 Subsequently, by order to show cause filed on January 4, 2002, they moved for preliminary injunctive relief. Specifically, plaintiffs ask for an order:
“enjoining the defendant from exercising any of the powers as a Member of the Westchester County Board of Legislators vested in him by the Westchester County Charter (although he may attend meetings of the County Board and its various legislative committees in a non-voting capacity and may receive his salary as Member of the County Board) while this action is pending and until a final judgment is entered * * (Order to show cause at 1-2.)
Defendant opposes the motion and has cross-moved for dismissal of the complaint. On his cross motion, he offers certain procedural attacks upon the complaint. In addition, he argues that plaintiffs have failed to satisfy the standard applicable to preliminary injunction motions.
With all papers now before the court, the motions are fully submitted for decision. Since the cross motion attacks the viability of the complaint, the court addresses that application first.
II. Dismissal of the Complaint
As noted, the cross motion seeks dismissal of the complaint on certain procedural grounds. In particular, defendant asserts that plaintiffs lack standing to bring this action and that necessary parties have not been joined.
A. Form of Proceeding
Defendant’s first attack is upon plaintiffs’ standing to seek relief in this lawsuit. In this regard, it is defendant’s contention that any challenge to his holding of the positions of Police Chief and County Legislator could only be brought by the State Attorney General in a quo warranto proceeding. Based upon that claim, he argues that plaintiffs do not have standing to maintain this action.
Executive Law § 63-b (1) provides, in relevant part, that: “The attorney-general may maintain an action, upon his own information or upon the complaint of a private person, against a person who usurps, intrudes into, or unlawfully holds or exercises within the state a franchise or public office, civil or military * * Pursuant to this statute, “a plenary action in the nature of quo warranto is the proper vehicle for removing *448 successful candidates from office or ordering a new election” (Matter of Felice v Berger, 182 AD2d 795, 797 [2d Dept 1992], lv denied 79 NY2d 758 [1992], citing Matter of Conroy v Levine, 62 NY2d 934, 935 [1984]), where the successful candidate has already assumed office (Matter of Duncan v Board of Commrs. of Port Washington Police Dist., 207 AD2d 834, 836 [2d Dept 1994], lv denied 84 NY2d 810 [1994]). “If, however, the office has not yet been occupied, then an action for a declaratory judgment is appropriate” (id., 207 AD2d at 836).
In this case, plaintiffs concede that “[defendant took the oath of office as a Member of the County Board of Legislators as is required by law,” and that “his oath of office was filed on December 3, 2001” (Neale affirmation at 4). Given these facts, it is beyond dispute that, absent some exception to the general rule, a challenge to defendant’s eligibility to hold a County Legislator seat could only be brought in a quo warranto action instituted by the Attorney General (see, Matter of Garufi v Bennett, 150 Misc 2d 799, 806 [Sup Ct, Putnam County 1991] [once candidate is notified that he is elected, files his oath of office and commences his elected duties, only method to try title to office is by quo warranto proceeding commenced by the Attorney General]; cf., Matter of Felice v Berger, supra, 182 AD2d at 797 [where village trustee had not been certified by village clerk and had not assumed office, quo warranto action was unavailable, but declaratory judgment was proper procedural vehicle]).[1]
In defendant’s view, plaintiffs’ failure to seek relief before he filed his oath of office dooms their attempt to attack his eligibil *449 ity to serve as a County Legislator by means of their declaratory judgment action. Plaintiffs take a contrary position, urging that they come within an exception to the general rule because only an issue of law is presented by their challenge.
It is well established that title to an elected office may be tested by mandamus in an article 78 proceeding “when only an issue of law is presented” (Ellis v Eaton, 136 AD2d 890, 891 [4th Dept 1988]; Matter of Dykeman v Symonds, 54 AD2d 159, 161 [4th Dept 1976]). Here, as both sides agree, the central question is whether defendant comes within the scope of Local Law 10, the answer to which depends in turn on whether his position as Police Chief is a “public office.” Although the parties sharply disagree as to whether this last question is purely one of law or is one of fact, as discussed more fully below the court agrees with plaintiffs that this is solely an issue of law. Consequently, a quo warranto proceeding was neither required nor permissible, but instead, plaintiffs should have instituted their challenge by means of a CPLR article 78 proceeding (see, Matter of Dykeman v Symonds, supra, 54 AD2d at 161 [mandamus is proper remedy to challenge right to hold public office “where the issue is one of law and does not require determination of questions of fact”]). Thus, contrary to defendant’s position, the complaint is not subject to dismissal because relief was sought in a declaratory judgment action by private citizens rather than a quo warranto proceeding brought by the Attorney General.
In obvious recognition that this attack upon the complaint might fail, defendant argues that notwithstanding the availability of relief by means of a CPLR article 78 proceeding in the nature of mandamus, since plaintiffs commenced a declaratory judgment action instead, dismissal of the complaint is warranted. This argument is wholly without merit.
CPLR 103 (c) provides that “[i]f a court has obtained jurisdiction over the parties, a civil judicial proceeding shall not be dismissed solely because it is not brought in the proper form, but the court shall make whatever order is required for its proper prosecution.” As has been recognized, the purpose of this statute “is to avoid dismissals for errors in form alone and to allow a court which has proper jurisdiction of the parties to permit the continuation of litigation without regard for technical defects” (Matter of O’Shea, 28 AD2d 977 [1st Dept 1967]).
Relying upon CPLR 103 (c), courts have repeatedly converted proceedings involving challenges to office holders rather than dismiss them for being technically defective (see, Matter of *450 Marino v Board of Elections of Westchester County, 199 AD2d 505, 506 [2d Dept 1993], lv denied 82 NY2d 664 [1994] [Election Law proceeding to challenge respondent’s eligibility to hold city council office on ground that he was not resident of district converted to declaratory judgment action by Appellate Division]; see also, Matter of Felice v Berger, supra, 182 AD2d at 797 [summary proceeding under Election Law to set aside village trustee election converted to declaratory judgment action]; Matter of Duncan v Board of Commrs. of Port Washington Police Dist., supra, 207 AD2d at 836 [recognizing authority of Supreme Court to convert CPLR article 78 proceeding to declaratory judgment action challenging election for office of police commissioner]; cf., Town of Fishkill v Royal Dutchess Props., 231 AD2d 511 [2d Dept 1996] [in action to declare that shopping mall was subject to taxes, Appellate Division acknowledged that “(i)t is a proper exercise of discretion for the Supreme Court to convert a declaratory judgment action to a proceeding pursuant to CPLR article 78 rather than dismiss the case outright”]). No different result should follow in this case, unless there is some other bar to the conversion of this action.
Endeavoring to create that bar, defendant argues that “[assuming, arguendo, that an Article 78 proceeding was appropriate in this setting, Plaintiffs [szc] have failed to exhaust their administrative remedies, a pre-requisite to the commencement of an Article 78 proceeding” (Piscionere reply affirmation para 11). Notably, his papers do not suggest the type of administrative proceeding that plaintiffs were required to pursue. Moreover, at the oral argument on the motions, when pressed by this court, all that defendant offered was that plaintiffs should have either sought an opinion from the County Attorney of Westchester County (the County Attorney) or filed a complaint with the County Legislature’s Board of Ethics (the Ethics Board). Most significantly, however, defendant conceded that any opinion rendered by either of these reviewing authorities would only be advisory, and would not be binding upon him.
CPLR 7801 (1) provides, in relevant part, that an article 78 proceeding “shall not be used to challenge a determination * * * which is not final or can be adequately reviewed by appeal to a court or to some other body or officer.” Under this provision, “one who objects to the act of an administrative agency must exhaust available administrative remedies before being *451 permitted to litigate in a court of law” (see, Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]).
The exhaustion of remedies rule is not without exceptions. Thus, insofar as relevant to this lawsuit, “[i]t need not be followed * * * when resort to an administrative remedy would be futile” (id.). Futility of administrative relief is established, inter alia, where the determination of the reviewing agency “is not binding but only advisory” (see, Love v Grand Temple Daughters, 37 AD2d 363, 365 [1st Dept 1971]).
Here, defendant has conceded that even if plaintiffs sought an opinion from either the County Attorney or the Ethics Board as to his eligibility to serve on the County Board, any opinion rendered would have no binding force upon him. Indeed, he admitted that even if an opinion adverse to his position was rendered, further independent action by the County Board would be required to pursue his removal, assuming that the County Board has such authority. What is beyond any credible dispute is that any effort by plaintiffs to seek such an “administrative” remedy would be wholly futile (see, id.). For that reason, defendant’s exhaustion of remedies argument is unavailing (see, Watergate II Apts. v Buffalo Sewer Auth., supra, 46 NY2d at 57).[2]
B. Nonjoinder of Necessary Parties
As his second point, defendant asserts that the complaint must be dismissed because plaintiffs have failed to join all necessary parties. In defendant’s view, if the proceeding is deemed an action at law, the County Board, the Clerk of the County Board and the Board of Elections are necessary parties because they would be involved in calling a special election to fill defendant’s seat on the County Board, if the relief sought in this action is granted. Defendant further claims that if the action is converted to a CPLR article 78 proceeding, the County Board and the Board of Elections are likewise necessary par *452 ties under CPLR 7802 (c).[3] According to defendant, because none of these parties has been named in this action, the complaint must be dismissed. The court disagrees.
Under CPLR 1001 (a), “[p]ersons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants.” Similarly, “[a] party whose interest may be adversely effected by a potential judgment must be made a party in a CPLR article 78 proceeding” (see, Matter of Karmel v White Plains Common Council, 284 AD2d 464, 465 [2d Dept 2001]). Although an action or proceeding may be dismissed for failure to join necessary parties (see, Matter of Mount Pleasant Cottage School Union Free School Dist. v Sobol, 163 AD2d 715, 716 [3d Dept 1990], affd 78 NY2d 935 [1991] [CPLR article 78 proceeding challenging Board’s decision to offer principal’s position to former employee properly dismissed for nonjoinder of current holder of position]), dismissal is unwarranted where “[t]he record is clear that complete relief could be accorded in the action with the parties that were before the court and that no party would have been inequitably affected by the absence of any other party” (Yecies v Sullivan, 221 AD2d 433, 434 [2d Dept 1995]).
In this proceeding, the relief sought is a determination that defendant may not hold both his position as Police Chief and his newly elected seat on the County Board. Only defendant is directly affected by any decision that shall ultimately be made by the court. Contrary to defendant’s view, no other person, government body or entity shall be directed to take any action, regardless of which side prevails in this proceeding. Therefore, there is no basis to dismiss this proceeding for failure to join necessary parties (cf., Matter of Wright v Town Bd. of Town of Ticonderoga, 170 AD2d 912, 913 [3d Dept 1991], lv denied 78 NY2d 857 [1991] [article 78 proceeding to compel Town Board *453 to remove Police Chief dismissed for nonjoinder of Police Chief] ).[4]
C. Conversion of the Action
Because defendant’s procedural attacks upon the complaint are unpersuasive, his motion to dismiss is denied.[5] As set forth above, the court shall convert plaintiffs’ declaratory judgment action to a CPLR article 78 proceeding in the nature of mandamus, and their summons and complaint shall be deemed a notice of petition and petition (see, Matter of Marino v Board of Elections of Westchester County, supra, 199 AD2d at 506). Defendant shall serve an answer to the petition according to the schedule set forth below.
III. Injunctive Relief
There being no basis for dismissal of the complaint, the court turns to plaintiffs’ motion for a preliminary injunction. To obtain the relief sought, plaintiffs “must prove three things: (1) likelihood of [their] ultimate success on the merits; (2) irreparable injury to [them] absent granting of the preliminary injunction; and (3) a balancing of equities” in their favor (Albini v Solork Assoc., 37 AD2d 835 [2d Dept 1971]). It is defendant’s position that none of the three prongs of this standard have been met by plaintiffs. The court concludes otherwise.
A. Likelihood of Prevailing on Merits
The first element of the preliminary injunction test is whether there is a likelihood that plaintiffs will prevail in the *454 underlying lawsuit, now converted to a CPLR article 78 proceeding. In support of their motion, plaintiffs claim that defendant is attempting to hold two public offices, in violation of Local Law 10, and that they will ultimately prevail on the merits of this claim.[6]
In response, defendant presents two arguments. First, he asserts that Local Law 10 does not constitute a bar to his retention of his two positions. Second, he maintains that there is at least an issue of fact as to whether his position as Police Chief constitutes a “public office” under the Local Law, thereby precluding the granting of a preliminary injunction.[7]
The parties’ competing arguments must be analyzed in terms of plaintiffs’ burden with respect to the first element of the preliminary injunction standard.[8] That is, plaintiffs are required to make “a prima facie showing of a right to relief’ (McLaughlin, Piven, Vogel v Nolan & Co., 114 AD2d 165, 172-173 [2d Dept 1986], lv denied 67 NY2d 606 [1986]).
Prefatorily, the court observes that defendant has made no challenge to the constitutionality of Local Law 10.[9] Under this circumstance, for the purposes of resolving the issues raised on plaintiffs’ motion, Local Law 10 is valid and controlling (see, *455 People v Concert Connection, 211 AD2d 310, 316 [2d Dept 1995], appeal dismissed 86 NY2d 837 [1995] [“It is well established that statutory law carries a strong presumption of constitutionality’]), and must be applied by this court (see, Cox v Katz, 22 NY2d 903, 905 [1968], cert denied 394 US 919 [1969] [“The function of judges * * * is to apply the law”]).
As set forth above, Local Law 10 bars a County Legislator from “holding] any other salaried or elective public office during his tenure.” Since it is undisputed that defendant is attempting to retain his County Legislator position while remaining the Police Chief of the HPD, the sole question as relates to plaintiffs’ likelihood of prevailing in the underlying proceeding is whether the position of Police Chief comes within the term “public office.” Because there is no dispute that this term is not defined by the Westchester County Laws, this court must look elsewhere for guidance on this issue. Not surprisingly, the parties have differing perspectives of how the court should resolve the question.
For his part, defendant maintains that there is an issue of fact as to whether his Police Chief position is a public office within the meaning of the Local Law. Alternatively, he contends that this court should determine the issue by reference to Westchester County Laws § 883.11 (h), which provides, in relevant part, that: “Officer or Employee means a candidate for county elected office or an elected or appointed official, officer or employee of the County of Westchester, whether paid or unpaid, including members of any administrative board, commission or other agency thereof * * In his view, “[t]he natural implication” of this section is that Local Law 10 “applies to County officers only’ (Piscionere affirmation para 39). This argument is not convincing because the chapter of the Westchester County Laws in which this definition is found sets forth the Code of Ethics that applies to County officers and employees, and is obviously not intended to define a “public office” for all other sections of the County Laws.[10]
In response, plaintiffs offer three different approaches to resolving this question. First, they assert that since defendant was required to take the oath of office required of all public officers under the Public Officers Law, both when he was ap *456 pointed a police officer in 1972 and then when he was appointed Police Chief in 1997, it is “[e]vident[] [that] the Town Board of the Town/Village of Harrison believes its police officers and police chief are public officers” (Neale affirmation at 8). As to this point, the court agrees with defendant that neither the “belief’ of the governing board of the Town of Harrison, nor its administration of an oath of office to defendant, is determinative of whether his Police Chief position is a public office under Local Law 10.
Plaintiffs’ second argument relies upon an analysis of the duties of a public official. As has been recognized, “[t]he duties of a public official involve some exercise of sovereign power” (see, Matter of Dawson v Knox, 231 App Div 490, 492 [3d Dept 1931], affd 267 NY 565 [1935]; see also, People ex rel. Corkhill v McAdoo, 98 App Div 312, 314 [2d Dept 1904] [“The essential element in a public office is that the duties to be performed shall involve the exercise of some portion of the sovereign power, whether great or small”]). According to plaintiffs, “[c]learly the position of the Chief of a municipal police force involves at least some element or exercise of the sovereign power” (Neale affirmation at 9). This argument is persuasive, since it could hardly be denied that whether in his role as the chief law enforcement officer of the Town of Harrison or as the administrative head of its police department, defendant must exercise some of the Town’s sovereign power. However, resort to that aspect of defendant’s duties is not required. Rather, the court agrees with plaintiffs’ final argument, i.e., that as a matter of law defendant’s Police Chief position is a public office within the meaning of Local Law 10.
In a variety of contexts it has repeatedly been held in this state that a police officer is a public officer (see, Canteline v McClellan, 282 NY 166, 170 [1940] [for purpose of determining whether police officer plaintiffs could be penalized for refusing to sign waiver of immunity before grand jury, Court held “(t)hat the plaintiffs are public officers there is no doubt”]; see also, Matter of Hodgson v McGuire, 75 AD2d 763 [1st Dept 1980] [under statute providing for removal from office, “(p)olice officers are public officers”]; Matter of Ryan v City of New York, 228 NY 16, 19 [1920] [in resolving police officer’s workers’ compensation claim, Court observed that “(h)is occupation was that of a patrolman, and his position a public office”]; Ferraro v City School Dist. of City of Schenectady, 69 Misc 2d 800, 801-802 [Sup Ct, Schenectady County 1972] [in proceeding to compel respondents to place police officer’s name on ballot for *457 the election of member of the Board of Education of city school district, trial court ruled that a police officer is a public officer, within purview of Education Law § 2502 (7), which barred a person from holding office of Board of Education member and a city office]).[11] This court likewise concludes that, within the meaning of the term under Local Law 10, a police officer, and more particularly, a Police Chief, holds a “public office” (see, Matter of Pauley v Noeppel, 1 Misc 2d 928, 931 [Sup Ct, Erie County 1953] [Deputy Police Commissioner in city police department is “public officer” under statute providing for vacatur of public office upon conviction of felony or crime involving violation of oath of office]). In view of that determination, it is plain that plaintiffs have demonstrated a likelihood that they will prevail in the underlying proceeding on the merits of their claim that defendant is violating Local Law 10 by retaining his Police Chief position while serving on the County Board.[12]
B. Irreparable Injury
Plaintiffs’ second burden is to demonstrate that they will be irreparably injured unless the court issues a preliminary injunction. “Irreparable injury in this context means any injury for which money damages are insufficient” (Klein, Wagner & Morris v Lawrence A. Klein, P.C., 186 AD2d 631, 633 [2d Dept 1992]). Moreover, entitlement to injunctive relief requires a showing of “irreparable harm which is threatened and imminent” (see, Atlantic Beach Prop. Owners’ Assn. v Nautilus Mgt. Corp., 11 Misc 2d 262, 263 [Sup Ct, Nassau County 1958]).
Here, plaintiffs assert that defendant , has assumed his position on the County Board and that in the immediate future he shall be participating in all aspects of the Board’s work, including voting upon matters coming before the Board for its consideration. It is their position that “[a]t the very minimum, [they] and all other residents of Westchester have a right to expect and to demand that the persons who serve as Members of the County Board of Legislators will comply with the requirements for eligibility to serve that are explicitly established by *458 the County Charter” and “have been in effect since 1970” (Neale reply affirmation at 13).
Defendant’s opposition on this element of the injunction standard is essentially twofold. First, he claims that plaintiffs have failed to show that they face irreparable injury if the relief sought is not granted. Second, he contends that, in fact, there is no risk of imminent harm to plaintiffs, as demonstrated by their failure to seek a preliminary injunction until almost two months after he was elected.
Contrary to defendant’s view, plaintiffs have sufficiently established that there is an imminent risk of harm to them which cannot be adequately compensated in money damages. In this case, defendant has begun his term as a County Legislator. It is undisputed that he has already attended meetings related to his position and that he will soon take part in the deliberative and voting processes of that branch of the County government. If he is not legally eligible to hold that position by virtue of his failure to resign his position as Police Chief, then plaintiffs, as voters in his district, and indeed, all county residents, are irreparably harmed by his casting of votes on the enactment of county laws involving, inter alia, budgets and taxes, local law enforcement and environmental issues. The court agrees with plaintiffs that they and all other county residents are entitled to representation by persons who fully comply with laws governing eligibility of the members of the County Legislature.
This determination is not undermined by plaintiffs’ delay in instituting their action or seeking injunctive relief until several weeks after the November 2001 election. Clearly, where the lawsuit and this motion were filed prior to the date that defendant began exercising his full powers as a member of the County Board, it cannot be concluded that their delay constitutes either a waiver of their right to seek injunctive relief or a concession on their part that such relief is unwarranted. To the contrary, under the circumstances presented, it is evident that plaintiffs will be irreparably injured if the injunctive relief sought on their motion is not granted.
C. Balancing of Equities
Plaintiffs’ final hurdle is to show that a weighing of the equities favors their position. As to this element of the three-prong standard, defendant presses his central equitable argument, i.e., that rather than plaintiffs being irreparably injured, it is the voters of his district and he who will suffer injury, because *459 he “holds the office by the will of the voting public” (Piscionere affirmation para 31), and those voters will be disenfranchised if a preliminary injunction is issued.[13]
In balancing the equities in this matter, significant weight must be given to the effect of permitting defendant to take an active role in the legislative process by voting on matters that come before the County Board. Based upon this court’s conclusion that, as a matter of law, defendant’s Police Chief position is a public office within the meaning of Local Law 10, it is likely that plaintiffs will prevail on their claim that defendant may not also retain his seat as a County Legislator, and that he will be required to choose which position to retain. If the preliminary injunction is not granted, defendant, who appears to be ineligible to serve on the County Board while he remains Police Chief, will vote on any number of proposed laws or actions affecting not just plaintiffs, but all county residents. As this court hypothesized at the oral argument on the motions, a situation could readily arise where votes cast by defendant were later found to be illegally cast because of his ineligibility. In such event, substantial adverse consequences could result. At a minimum, the voters of this county could understandably have doubts as to the legitimacy of the actions taken by their Legislature. These are certainly considerations of the most serious nature.
Weighed against that is defendant’s contention that the issuance of a preliminary injunction will disenfranchise the voters of his district and deprive him of a position which he won by the will of the voters. Disenfranchisement is, of course, a concern of the highest order. As our courts recognize, “[t]he right of suffrage is one of the most valuable and sacred rights which the Constitution has conferred upon the citizen of the state” (People ex rel. Stapleton v Bell, 119 NY 175, 178 [1889]), and “[fit shall be given the highest respect, especially by our courts, and shall not be compromised, or allowed to be diminished” (Matter of Ginenthal v D’Apice, 137 Misc 2d 849, 850 [Sup Ct, Westchester County 1987]). Thus, if this case actually involved the disenfranchisement of voters, the equities might weigh in defendant’s favor. What is fatal to defendant’s position is that, as Matter of Dykeman v Symonds (supra) *460 informs, it is choice, not disenfranchisement, that is involved on plaintiffs’ motion.
Dykeman presented a situation in which respondent Symonds, who held appointed office as a Motor Vehicle Supervisor of Yates County, a position whose salary was fixed by the County Legislature, was elected to a seat on that legislative body. Petitioner brought an article 78 proceeding to compel Symonds to resign from one of the two positions on the ground that she was barred from holding both by General Municipal Law § 801. That statute provides, in relevant part, that “no municipal officer or employee shall have an interest in any contract with the municipality of which he is an officer or employee, when such officer or employee, individually or as a member of a board, has the power or duty to (a) negotiate, prepare, authorize or approve the contract of authorize or approve payment thereunder.” Supreme Court denied respondent’s dismissal motion and granted summary judgment to petitioner.
In affirming Supreme Court’s decision, the Appellate Division addressed Symonds’ argument that the lower court’s judgment resulted in her disenfranchisement and that of the voters in her district, as follows:
“There is no question of disenfranchisement here. This is not a case where the candidate cannot hold an office to which he was elected. The judgment in this case does not disqualify respondent Symonds from continuing as County Legislator. It merely requires that she resign from her position as Motor Vehicle Supervisor if she wishes to continue as County Legislator. The choice lies with her.” (Id., 54 AD2d at 164 [citations omitted and emphasis supplied].)
Like the respondent in Dykeman, defendant at bar has a choice, for the purpose of avoiding the impact of a preliminary injunction.[14] If he chooses to resign from his position as Police Chief, no basis for injunctive relief would exist and, as plaintiffs concede, their lawsuit would immediately be rendered moot. If, *461 conversely, he opts to retain both positions, then the equities clearly weigh in plaintiffs’ favor, especially considering that the injunction they request only bars defendant from exercising his powers, including his voting power, as a County Legislator, while permitting him to attend legislative meetings and receive his salary.
D. Form of Injunction
In view of the conclusion that plaintiffs have satisfied all three prongs of the preliminary injunction standard (see, Albini v Solork Assoc., supra), the court grants plaintiffs’ motion.[15] Recognizing that defendant does, at least for the present time, retain the choice to resign from his Police Chief position, the injunction to be issued shall be subject to the condition that it will be vacated immediately upon the effective date of such resignation.
IV. Undertaking
Because a preliminary injunction is being granted, the court is required to fix the amount of an undertaking to be posted by plaintiffs (CPLR 6312 [b]). The sum fixed must be sufficient to compensate defendant for the damages and costs sustained by him as a result of the issuance of the preliminary injunction in the event that it is later determined that plaintiffs were not entitled to the injunctive relief (id.; see, Carter v Konstantatos, 156 AD2d 632, 633 [2d Dept 1989]).
Here, unfortunately, neither party has addressed the issue of the amount of the undertaking to be set by the court. Indeed, whether for tactical reasons or otherwise, defendant has not even requested that an undertaking be required in the event that a preliminary injunction is issued. That failure notwithstanding, it is clear that an undertaking must be posted by *462 plaintiffs (see, Schwartz v Gruber, 261 AD2d 526, 527 [2d Dept 1999] [“the language of CPLR 6312 (b) is ‘clear and unequivocal’, and it requires the party seeking the injunction to give an undertaking”]).
The amount of the undertaking to be ordered “is a matter within the sound discretion of the court” (id.). In this case, in determining the appropriate sum, the court has considered that the preliminary injunction to be issued does not deny defendant the right to continue to receive his salary as a County Legislator. Consequently, the damages that defendant could sustain are those relating directly to his litigation costs. Under the circumstances involved in this matter, the court therefore determines that the appropriate amount of the undertaking is $5,000, which shall be jointly posted by plaintiffs.
V. Conclusion
In November 2001 defendant successfully won election to the County Legislature. He has since maintained the legal stance that he may retain his legislative seat while also remaining as the Chief of Police of the Town of Harrison, notwithstanding the language of Local Law 10. On their motion, plaintiffs have sufficiently demonstrated a likelihood that they will prevail in the underlying proceeding on their claim that under that local law, this he is not permitted to do. Plaintiffs have further shown that they will be irreparably injured if defendant is not enjoined from exercising his full powers as a County Legislator and that under the circumstances, the equities weigh in their favor. Upon that showing, they are entitled to the injunctive relief sought. If defendant wishes to avoid this restraint, all he need do is resign the public office which is the source of the conflict under the local law (see, Matter of Dykeman v Symonds, supra, 54 AD2d at 164). Pending the final resolution of this proceeding, the choice is solely his.
Wherefore, it is ordered that plaintiffs’ motion is granted; and it is further ordered that defendant’s cross-motion is denied; and it is further ordered that plaintiffs’ action for a declaratory judgment is converted to a CPLR article 78 proceeding, that plaintiffs and defendant are deemed petitioners and respondent, respectively, in that proceeding, and that plaintiffs’ summons and complaint are deemed a notice of petition and petition, respectively.

. Plaintiffs have attempted to avoid the requirement that a quo warranto proceeding be commenced by the Attorney General through the submission of a letter written by the Attorney General to plaintiffs’ counsel, J. Henry Neale, in response to Neale’s written inquiry as to whether a quo warranto proceeding is appropriate in this case. Specifically, plaintiffs state that the Attorney General’s letter is evidence that “the Attorney General does not agree with [defendant’s] theory” (Neale reply affirmation at 2). As an initial matter, this characterization is an overstatement of the Attorney General’s response. Therein, the Attorney General merely states that “it is not the present intention of the Attorney General’s office to intervene in th[is] * * * lawsuit, nor is it at this time considering commencement of a quo warranto proceeding” (id.\ exhibit B). As is apparent, the Attorney General has offered no opinion as to whether quo warranto is appropriate in this matter. Moreover, whatever value the Attorney General’s opinion would have as to that issue, it would certainly not be binding upon this court (see, Thruway Motel of Ardsley v Hellman Motel Corp., 11 Misc 2d 418, 422 [Sup Ct, Westchester County 1958] [“The opinion of the Attorney-General * * * (is) entitled to great weight in determining the construction and effect of (a) statute, but (is) not necessarily binding on (the) court”]).

. This analysis' assumes that the exhaustion of remedies doctrine is applicable in the first instance. In this case, defendant does not point to any administrative determination that has been rendered and would therefore be appealable to another administrative board or agency. Thus, there appears to be no basis for invoking the doctrine in this matter (cf., Matter of Trim v Milham, 42 Misc 2d 348, 350 [Sup Ct, Cortland County 1964] [exhaustion of remedies doctrine does not apply where “proceeding is one in the nature of mandamus to compel the performance of a duty specifically required by law and not one to review a determination involving an exercise of judgment or discretion”]).

. Defendant’s reliance upon CPLR 7802 (c) is misplaced because that section relates to proceedings “to restrain a body or officer from proceeding without or in excess of jurisdiction in favor of another,” which are in the nature of prohibition. As discussed above, a proceeding to try title to an elected office is in the nature of mandamus (see, Ellis v Eaton, supra, 136 AD2d at 891). In proceedings other than prohibition, the standards of CPLR 1001 apply.

. In his reply papers, defendant also proffered his nonjoinder argument as a bar to the conversion of the action to a CPLR article 78 proceeding. This ground provides no more support for a denial of relief under CPLR 103 (c) than it does for dismissal of the complaint.

. Defendant also identified lack of subject matter jurisdiction as a ground for dismissal, although his arguments are all couched in terms of lack of standing for failure to commence the proper proceeding. “Subject matter jurisdiction has been defined as the ‘power to adjudge concerning the general question involved, and is not dependent upon the state of facts which may appear in a particular case, arising, or which is claimed to have arisen, under that general question’ ” (Thrasher v United States Liab. Ins. Co., 19 NY2d 159, 166 [1967], quoting Hunt v Hunt, 72 NY 217, 229 [1878]). “The Supreme Court is a court of general jurisdiction, and it is competent to entertain all causes of actions unless its jurisdiction has been specifically proscribed” (Thrasher v United States Liab. Ins. Co., supra, 19 NY2d at 166). Because it is beyond question that this court has jurisdiction to determine declaratory judgment actions and CPLR article 78 proceedings, any argument by defendant that the complaint must be dismissed for lack of subject matter jurisdiction is plainly without merit.

. Plaintiffs go further and assert that they will ultimately succeed on a summary judgment motion that they intend to file at a later time. In view of the conversion of the action to a proceeding, summary determination may be rendered without the need for a summary judgment motion (see, CPLR 409 [b] [in special proceeding, “(t)he court shall make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised”]).

. Defendant also tenders his standing, jurisdiction and nonjoinder arguments in support of this position. In his view, “[i]t is [] axiomatic that the Plaintiffs are unable to prevail in the required showing of a likelihood of success and [he] is entitled to a dismissal of this action” (Piscionere affirmation para 33). Inasmuch as these arguments have been found unpersuasive on defendant’s cross motion, they are likewise unavailing in opposition to plaintiffs’ motion for injunctive relief.

. As plaintiffs make clear, on their motion they rely solely upon that portion of their pleading which asserts a basis for relief under Local Law 10. Consequently, for the purposes of this decision and order, the court does not consider whether plaintiffs are likely to prevail on their alternative claim, i.e., that under the common law defendant may not retain both positions because his position as a County Legislator is “incompatible” with his position as Police Chief. For that same reason, defendant’s argument that the common law does not prohibit him from holding the two positions (Piscionere affirmation at 8-9) is without relevance to plaintiffs’ motion.

. Defendant states that he is “reserving] his right to challenge the constitutionality of this statute facially and as applied to him both under the New York and Federal Constitutions” (Piscionere affirmation para 40). Although such a challenge may well be problematic for defendant (cf., Matter of *455 Dykeman v Symonds, supra, 54 AD2d at 164), it is clear that there are no constitutional issues before the court on either of these motions.

. In fact, Westchester County Laws § 883.11, the definition section, specifically states that the terms defined therein apply “for purposes of this chapter,” i.e., chapter 883, the Code of Ethics.

. Notably, defendant does not even address, much less endeavor to distinguish, any of the cases relied upon by plaintiffs on this issue, including Canteline v McClellan (supra), Matter of Ryan v City of New York (supra) and Ferraro v City School Dist. of City of Schenectady (supra), cited above.

. It is because this issue is solely one of law that a quo warranto proceeding is inappropriate, and that a CPLR article 78 proceeding may be instituted by plaintiffs (see, Matter of Dykeman v Symonds, supra, 54 AD2d at 161).

. Although defendant also offered his “disenfranchisement” argument in support of his position that plaintiffs would not suffer irreparable injury in the absence of injunctive relief, it is repeated as to the third element of the injunctive standard, and the court views it as more appropriately addressed in the latter context.

. The court anticipates defendant’s complaint that unlike the situation in Dykeman, where the relief sought was a judgment directing respondent to resign from one of her positions, plaintiffs at bar seek a judgment declaring that his legislative seat is vacant and should be filled in a special election. That argument is of no significance for the purposes of plaintiffs’ motion, since the preliminary injunction sought does not deprive him of his elected office. Moreover, as relates to the underlying proceeding, since the relief sought is equitable in nature, if plaintiffs prevail the court may fashion the *461 ultimate remedy so that, as in Dykeman, no issue of disenfranchisement results.

. The court is aware that a more recent statement of the first element of the injunctive standard is that “the movant must demonstrate a clear right to relief which is ‘plain from the undisputed facts’ ” (see, Blueberries Gourmet v Aris Realty Corp., 255 AD2d 348, 349-350 [2d Dept 1998], quoting Family Affair Haircutters v Detling, 110 AD2d 745, 747 [2d Dept 1985]). Although this court views this as merely a different formulation of the “prima facie showing” standard (see, McLaughlin, Piven, Vogel v Nolan & Co., supra, 114 AD2d at 172-173), to the extent that it constitutes a greater burden, it is apparent that it has been satisfied at bar, since the undisputed facts are that defendant currently holds the two positions and that Local Law 10 is valid, and the sole legal issue involved, i.e., whether defendant holds a public office as a Police Chief, is resolved against him as a matter of law.