Bobebt O. Bbink, J.
This is a proceeding pursuant to article 78 of the Civil Practice Act, in which the petitioner, Salvatore A. Fauci, prays for an order directing the respondent, Steve Kuracina, Treasurer of the Village of Endicott, to certifiy petitioner’s name on the payroll as the duly appointed, qualified and acting Police Justice of the Village of Endicott, New York; restraining the said Treasurer from certifying on the payroll of the Village of Endicott, the name of any other person as Police Justice of the village; and restraining the respondent Board of Trustees of the Village of Endicott, and the Mayor of said village, from making any other appointment to the office of Police Justice during the continuance of petitioner’s term in such office and during the period in which he remains qualified-therefor and acting therein.
The facts are undisputed. The office of Police Justice of the Village of Endicott was held by John D. O ’Loughlin, having been elected in the general election held November, 1959, the *566 term commencing on January 1, 1960, for a term of four years, ending on December 31, 1963. In the general election held in November, 1962, while still Police Justice, Judge O’Loughlin was duly elected as a Judge of the Family Court of Broome County for a term of 10 years, commencing January 1,1963, and expiring December 31, 1972. On December 26, 1962, Judge 0 ’Lougiilin underwent an official 1 ‘ robing ’ ’ ceremony, at which time he received a gavel as a gift from his family, from the other Family Court Judge, Frank E. Thomas. In one of his affidavits, Judge O’Loughlin swears that on January 1, 1963, at approximately 8:30 a.m., he held court as Police Justice, as was his custom. On January 1, 1963, at approximately 11:00 a.m., the incumbent Board of Trustees of the Village of Endicott, held a meeting at which a resolution was introduced for the second time (the first introduction of the same resolution having occurred on Dec. 26, 1962) and adopted, appointing Salvatore A. Fauci Village Police Justice. The term of the appointing Board of Trustees ended one hour later at 12:00 p.m. At about 2:15 p.m., of the same day, i.e., January 1, 1963, Judge O’Loughlin took and filed his oath of office as Judge of the Family -Court in the office of the County 'Clerk of Broome. On January 2, 1963, Judge O’Loughlin submitted his resignation as Police Justice to the Mayor and Board of Trustees of the Village of Endicott, effective immediately. This resignation was accepted at a regular meeting of the newly constituted Board of Trustees on January 7,1963.
Both counsel for the Board of Trustees and counsel for the individual Republican members of the board, dispute the applicability of an article 78 proceeding in determining the issues here involved. Counsel for the Board of Trustees argues that the appropriate remedy in an action to try title to office is quo warranto. Counsel for the Republican members of the board denies that quo warranto is proper, but seeks a declaratory judgment determining the rights of the respective parties.
Although the courts generally indicate that quo warranto is the proper remedy to try title to office, numerous cases hold that under certain circumstances, an action in the nature of mandamus is proper. (Matter of Sylvester v. Mescall, 277 App. Div. 961; Schlobohm v. Municipal Housing Auth., 270 App. Div. 1022, affd. 297 N. Y. 911.) The circumstances required are well stated in Matter of Smith v. Dillon (267 App. Div. 39, 42): “ The authorities are in substantial agreement that a public officer wrongfully ousted from office can be restored thereto by mandamus and that one who has clear title to a public office or a prima facie right thereto piay be put into possession of the *567 office by mandamus even though the title is disputed by another, at least where such disputant is not in office under color of title so as to be a de facto officer. * * * Quo warranto is available only where the office in dispute is then held by another party under color of right. * * * Petitioner’s remedy is not an action in quo warranto for that will lie only where the party proceeded against is either a de facto or a de jure officer in possession of the office. In addition to that the writ only lies when the facts are in dispute: here no fact is disputed but a mere question of law.” (Emphasis supplied.)
In the case at bar, a quo warranto proceeding is improper since there is not another party presently holding the office of Police Justice under color of right. There must be another office holder at the inception of the quo warranto proceeding. The fact that there may have been such an incumbent under color of right on January 1, is insufficient.
Further, the only issues before the court are issues of law. The denials in the answers of the respondents do not give rise to any factual questions. (Matter of Lenc v. Zicha, 223 App. Div. 158.) The proceeding pursuant to article 78 is, therefore, proper.
The main issue before the court is when the vacancy occurred. It is a well-established rule in New York that the authority to appoint is vested in the appointing power in office when the vacancy arises. The Court of Appeals in People v. Fitzgerald (180 N. Y. 269, 274) said: “Both parties seem to concede, and such is the law, that an appointment to office in anticipation of a vacancy therein is good only in case the officer making the appointment is still in office when the vacancy occurs.” (See, in accord, People ex rel Smith v. Kenyon, 241 App. Div. 177, affd, 265 N. Y. 537.) Since, therefore, the appointing Board of Trustees held office until January 1, 1963 at noon, there must have been a vacancy prior to noon if the appointment of the petitioner is to be considered valid.
When the vacancy arose depends, to the extent that the Constitution and statutes are not contrary, on the common-law rule of incompatibility of office. The applicable rule, which is generally held in all American jurisdictions, holds that where a single person holds two incompatible offices, the acceptance of the second ipso facto vacates the first. (Matter of Smith v. Dillon, 267 App. Div. 39.)
The first case in New York to expand on the rule was People ex rel. Ryan v. Green (58 N. Y. 295). There the court stated (pp. 304-305): “ Incompatibility between two offices, is an inconsistency in the functions of the two: as judge and clerk of the *568 same court-officer who presents his personal account subject to audit, and officer whose duty it is to audit it. * * * Where one office is not subordinate to the other, nor the relations of the one to the other such as are inconsistent and repugnant, there is not that incompatibility from which the law declares that the acceptance of the one is the vacation of the other. The force of the word, in its application to this matter is, that from the nature and relations to each other, of the two places, they ought not to be held by the same person, from the contrariety and antagonism which would result in the attempt by one person to faithfully and impartially discharge the duties of one, toward the incumbent of the other. * * * The offices must subordinate, one the other, and they must, per se, have the right to interfere, one with the other, before they are incompatible at common law. ’ ’
No question has been raised as to the incompatibility of the office of Police Justice and Family Court Judge. That they are incompatible is clear, since, for example, “ family matter ” cases are transferred to Family Court from the Police Court (Family Court Act, § 813): a Family Court Judge may act as County Judge (Constitution, art. VI, § 14), and the County Court is the court which hears appeals from Police Court decisions. There is clearly, then, a conflict, present and potential.
Since “ acceptance ” of an incompatible office is necessary to work an automatic vacation of the first office, the question to be determined is when the ■“ acceptance ” occurred.
It is petitioner’s contention that the vacancy occurred at midnight, January 1, 1963. Respondents argue that the Police Justice vacancy did not occur until either the oath of office for Family'Court was taken after 2:00 p.m., on January 1, 1963, or irnt.il a resignation was tendered on January 2,1963.
Petitioner cites the following statutes and section of the Constitution to justify his contention:
Section 20 of article VI of the New York Constitution:
“ A * * * judge of the family court * * * who is elected or appointed after the effective date of this article may not:
“ (1) hold any other public office or trust except [exceptions not applicable].”
The statutes cited are: County Law (§ 400, subd. 1; § 402) and Public Officers Law (§§ 15, 30).
Petitioner submits that in view of the above statutes and the quoted section of the Constitution, the oath of office is not *569 necessary to commence the Family Court Judge’s term of office. Since his acts, under section 15 of the Public Officers Law, are valid before the oath has been taken, his term of office starts automatically on January 1, 1963. The other statutes indicate that failure to take the oath within 30 days will vacate the position, but such failure, petitioner contends, is a condition subsequent and not a condition precedent to his right to hold office. He argues that since his term commences at midnight, January 1, according to the statutes, the constitutional prohibition against holding a second office must go into effect at midnight, thereby automatically vacating the office of Police Justice.
That the Family Court position commenced as of midnight, January 1, 1963 is borne out by New York law. Thus, in People ex rel. Woods v. Crissey (91 N. Y. 616) the court said at page 635: “ The action of these seven aldermen in voting for public commissioners would have been valid if they had taken no oath. (In re Kendall, 85 N. Y. 305; Foot v. Stiles, 57 id. 401; Weeks v. Ellis, 2 Barb. 320.) These cases decide that the officer elected and who by the certificate of the proper authority to that effect, is or has become duly qualified to hold the office, is the rightful officer although holding by a defeasible title when he does not take the oath of office. That omission may work a forfeiture, but unless and until such forfeiture is adjudged, he remains the rightful officer as if he had taken the proper oath.”
So, for example, had there been another Family Court Judge in the same position prior to January 1, 1963, he would be estopped from “ holding over”, pursuant to section 5 of the Public Officers Law, although the oath had not been taken. The only Judge would be the newly elected incumbent after midnight January 1,1963, who would have been vested with good title to the office, although defeasible, subject to the contingency of a failure to take the oath.
In view of this fact, can it be said, as petitioner contends, that acceptance of the second office can be implied as of the time the right to fulfill the obligations of the office arose?
The answer appears to this court to be in the negative. Acceptance is required in New York even when there is, as here, a constitutional requirement prohibiting the holding of two incompatible offices. As the court said in Matter of Smith v. Dillon (267 App. Div. 39, 43, supra): “ At common law and under constitutional and statutory prohibitions against the holding of incompatible offices, a person who accepts and qualifies for a second and incompatible office is generally held to vacate, or by implication resign, the first office (Emphasis supplied.)
*570 The eases in various jurisdictions which have discussed acceptance, have generally pointed to a particular act or acts on the part of the dual office holder which indicate his frame of mind as to the two offices. The power of choice belongs to the office holder, not to an appointing authority. So, for example, a Kentucky court held ‘1 that the actual entering upon the performance of the duties of an office is the best evidence of the intent to choose that office ”. (Emphasis supplied.) (Adams v. Commonwealth ex rel. Buckman, 268 S. W. 2d 930 [Ken.].) In that case, the court held that where a county school board member was appointed as County Election Commissioner, presented his appointment to the County Clerk, executed a bond, and performed certain duties as such Commissioner, he had “ accepted ” the latter office although he had never taken the oath.
Where the Colorado River Commissioner attended the meetings of the commission, made numerous trips to points outside the State in furtherance of the purposes of the act creating the commission, gave considerable time to advising and conferring with citizens of the State and others, and filed with the State auditor upon the $100,000 appropriated for the purpose, claims for his hotel bills, traveling expenses, and incidentals incurred at the meetings and on trips, he had accepted the position, thereby vacating, ipso facto, the office of Industrial Commissioner. This was so, even in the absence of receiving a commission as required by statute, and in the absence of taking and filing his oath. (McCluskey v. Hunter, 34 Ariz. 189.)
In People ex rel. Goodell v. Garrett (72 Cal. App. 452) the court held acceptance to be an entering upon the duties of the office.
All the above indicia of acceptance constitute the court’s way of determining the state of the dual officeholder’s mind regarding which of the two incompatible positions, he will accept. It can be determined by less than an official act, such as taking the oath of office. But some positive showing of acceptance must be made on the officeholder’s part.
What indication of acceptance was there in the instant ease? Judge O’Loughlin, while holding the office of Police Justice, ran and was elected Judge of the Family Court. On December 26, 1962, he underwent a robing ceremony at which time he received a gavel from Judge Frank E, Thomas, which was presented to Rim by the members of Ms family. This was not an official ceremony, but rather a ceremony for family and friends of the newly elected Judge. It was held five days before Judge O’Lohghhh’s term of office as Family Court Judge was to commence.
*571 The petitioner argues that this was evidence of an intent to accept which would have become effective as of midnight, January 1, 1963. However, keeping in mind that it is the officer’s will which must be determined, what further acts were done? At 8:30 a.m., January 1, 1963, according to Judge O’Loughlih’s affidavit, he presided in court as Police Justice. If anything, this act negatives any intent to accept the second office as of midnight, January 1. Prior to midnight there was nothing to accept or reject, since the office had not yet vested. The first act indicated in the papers before this -court, after the vesting of the office, was one that negatived present acceptance. No other act was done by Judge 0 ’Lotjghlln which could be interpreted as accepting the office of Family 'Court Judge until 2:15 p.m., when he took the oath of office. In his affidavit, Judge 0’Loughlih states: “ At no time prior to January 2, 1963, did I perform any judicial functions as Family Court Judge of Broome County, New York. At no time prior to taking and filing the oath to the office of Family Court Judge of Broome County as aforesaid did I make my election to assume that office. ’ ’
Both the acts and the sworn affidavit indicating his intention in the matter, lead to the conclusion that not until the taking of the oath was the office of Police Justice vacated.
If, as petitioner argues, the above interpretation may lead to abuses by the dual officer who exercises his discretion in failing to assume the second office and continues for a limited period in the first, then such problem must necessarily be solved by the Legislature.
The case of Matter of Gilroy (11 App. Div. 65) cited by the petitioner is not in conflict. There, the court said at page 67: “ The position of a commissioner of appraisal in this proceeding was clearly a public trust, and from the time of entering upon his office as a justice of this court, Judge Keogh was disqualified from acting as a commissioner, and there was necessarily a vacancy in the commission. ’’ [Emphasis supplied.]
The fact that the court did not discuss what act on the part of the Supreme Court Justice constituted an “ entering” upon the duties of office, does not indicate that none was necessary before the Commissioner’s job was vacated.
In view of the court’s holding on this fundamental point, it is unnecessary to discuss the validity of the resolution appointing the petitioner.
The decision -of this court is that at 11:00 a.m., January 1, 1963, when the Board of Trustees appointed Mr. Fauci, there was no vacancy, and therefore, the petition is denied.
*572 In view of the fact that the fundamental issue involved is determined by this decision, any affirmative declaratory judgment in favor of the respondent seems unnecessary, and is denied.