OPINION OF THE COURT
John P. DiBlasi, J.
“In a republican government, like ours, * * * political power *428 is reposed in representatives of the entire body of the people, chosen at short intervals by popular elections” (Ku Klux Cases, 110 US 651, 666 [1884]). At issue in this CPLR article 78 proceeding is whether the right of the residents of a county legislative district to be represented in their local government should continue to be impeded by the personal interest of a recently elected county legislator who wishes to serve in that capacity while retaining his position as the Police Chief of a municipal police department. Because respondent’s acceptance of a seat on the Westchester County Board of Legislators (the County Board), a position incompatible with that of Police Chief of his town/village, constituted a resignation of the latter position by implication (see, Matter of Smith v Dillon, 267 App Div 39, 43 [3d Dept 1943]), so that he ceased to be a Police Chief on December 3, 2001, this proceeding is resolved without a court-imposed remedy.
I. Relevant Factual Background
Respondent is the Chief of Police of the Town/Village of Harrison Police Department (the HPD), a position to which he was appointed in 1997, after serving as a member of the HPD since 1972. As Police Chief he supervises approximately 70 police officers in their enforcement of the law in the Town/Village of Harrison (the Town). It is conceded that in his position, he “has some discretionary powers and duties” (answer, para 4), and that “public safety programs of the Town/Village of Harrison have received small sums of money for the DARE program, in the past, as do all municipalities in Westchester County” (id., para 5),[1] which money is provided as a consequence of adoption of the county operating budget (the County Budget) by the County Board.
In 2001 respondent was a candidate for the elected position of county legislator, representing District 6, which includes the Town/Village of Harrison and the Villages of Port Chester and Rye Brook (the Sixth District). He was elected to that position in November 2001. Both during the campaign and following his election, respondent steadfastly maintained that it was his intention to retain his position as Chief of Police of the HPD while serving as county legislator for the Sixth District.
On or about December 3, 2001, after his election was certified by the Westchester County Board of Elections, respondent *429 executed and filed his oath of office as a member of the County Board. Thereafter, he began taking part in County Board committee meetings and has acted as a county legislator representing the Sixth District subject, most recently, to the limitations imposed by a preliminary injunction issued by this court, as discussed below. In response to his actions, on or about December 21, 2001, petitioners commenced an action at law in which they sought a judgment declaring that respondent may not serve as a county legislator “while he also holds a salaried public office as the Police Chief of the Town/Village of Harrison” (petition, at 6).
II. Procedural History
Following service of their summons and complaint upon respondent, but prior to his service of an answer, petitioners moved by order to show cause dated January 4, 2002 for a preliminary injunction barring “[respondent] from exercising any of the powers as a Member of the Westchester County Board of Legislators vested in him by the Westchester County Charter (although he may attend meetings of the County Board and its various legislative committees in a non-voting capacity and may receive his salary as Member of the County Board) while this action is pending and until a final judgment is entered * * * .” (Order to show cause, at 1-2.) Respondent opposed the motion and cross-moved for dismissal of the complaint on several procedural grounds.
Upon consideration of the arguments put forth on the cross motions, the court rendered a decision and order entered January 29, 2002 (the January 29th decision) which, inter alia, granted petitioners’ motion and denied the cross motion in its entirety (Held v Hall, 190 Misc 2d 444 [Sup Ct, Westchester County 2002]). Specifically, the court issued a preliminary injunction,
“pending further order of this Court or the final resolution of this proceeding, or until [respondent] resigns his position as Chief of Police of the Town of Harrison, whichever occurs first, [which] * * * prohibited and enjoined [him] from exercising any of the powers as a member of the Westchester County Board of Legislators conferred upon him by the Westchester County Laws, except that he may attend meetings of that board and its various legislative committees in a non-voting capacity and may receive his salary as a member of that board.” (Decision and order, Jan. 29, 2002, slip op, at 29.)
*430 The court conditioned the issuance of the preliminary injunction upon petitioners’ joint posting of an undertaking in the sum of $5,000, which was subsequently posted by them in cash.
The January 29th decision also converted petitioners’ declaratory judgment action to a CPLR article 78 proceeding in which the parties, originally designated as plaintiffs and defendant, are deemed petitioners and respondent, respectively, and deemed the summons and complaint to be a notice of petition and petition, respectively. In addition, the court established a schedule for the filing of further papers in the CPLR article 78 proceeding. The court specifically provided that respondent could serve, in addition to his answer to the petition, any other “supporting papers and legal memorandum” (id. at 28).
Although the January 29th decision directed that the issues presented in this proceeding would be considered on the papers only, the court subsequently determined that it would be appropriate to hear oral argument from the parties. That oral argument was conducted on the adjourned date of this proceeding, March 6, 2002. At the argument (the March 6th oral argument) the court confirmed that the only paper submitted in opposition to the petition was a two-page verified answer, not supported by any affidavits or memorandum of law.[2] Following the court’s consideration of the arguments of the parties in open court and in their respective papers, it addresses the issues presented.
III. Discussion
“As a general rule, county legislators may hold any other public office or be employed in the public sector unless, inter alia, the offices or the office and employment are incompatible at common law” (Matter of Dupras v County of Clinton, 213 AD2d 952, 953 [3d Dept 1995]) or the dual office holding is barred by constitutional provision or statute (see, Matter of Dykeman v Symonds, 54 AD2d 159, 162 [4th Dept 1976]). In this proceeding, as noted, petitioners assert both of these grounds in support of their view that respondent cannot *431 continue to serve as county legislator and chief of police. First, they claim that the two offices are incompatible under the common law. Second, they maintain that Local Law No. 10 (1970) of the County of Westchester § 107.31 (4) (hereinafter Local Law 10) bars respondent from holding the two offices. Although respondent maintained at the March 6th oral argument that there is a relationship between the two grounds, the court addresses them separately.
A. Common-Law Bar
“Incompatibility between two offices [] is an inconsistency in the functions of the two” (People ex rel. Ryan v Green, 58 NY 295, 304 [1874]). It “has been said to exist when there is a built-in right of the holder of one position to interfere with that of the other, as when the one is subordinate to, or subject to audit or review by, the second” (O’Malley v Macejka, 44 NY2d 530, 535 [1978]). As is recognized, the harm presented in such situations, where “both posts [are] held by the same person, [is that] the design that one act as a check on the other would be frustrated” (see, id.).
Although application of the doctrine is not without difficulty, incompatibility may be seen to arise in two separate settings. The first is “where the relations of the one are * * * inconsistent with or repugnant to the other” (see, Town of Ramapo v Watton, 90 Misc 2d 914, 916 [Sup Ct, Rockland County 1977]). The second is where one office is subordinate to the other, such that “they must, per se, have the right to interfere, one with the other” (see, People ex rel. Ryan v Green, supra, 58 NY at 305).
Clearly, there is no inconsistency or repugnancy between the two positions respondent seeks to retain in this case. In his elected office, respondent will be acting as the representative of the people of the Sixth District in their local legislative body. It cannot be credibly denied that in that position he will exercise no review or control of the actions of the person holding the office of Police Chief of the HPD (see, O’Malley v Macejka, supra, 44 NY2d at 535 [local real property assessor not barred from serving on County Board of Representatives by incompatibility doctrine because “neither local assessors nor county legislators review each other’s work”]; see also, 1994 Ops Atty Gen No. I 94-1030, *1 [town police officer may hold position of village trustee of village within the town because “Village trustees are the legislative body of the village” while “Town police officers are responsible for law enforcement within the town, including *432 any villages therein”]; cf., Town of Ramapo v Watton, supra, 90 Misc 2d at 917 [position of village trustee incompatible with that of member of Village Board of Assessment Review because challenges to assessments would be reviewed by trustees]).
It is the alternative incompatibility setting that resolves- this proceeding against respondent. No clearer case of incompatibility can arise than, as here, where one position involves an element of budgetary control over the other, as demonstrated by Matter of Dupras v County of Clinton (supra, 213 AD2d at 952).
In Dupras, respondent, who was employed as a senior clerk by the Clinton County Board of Elections, was appointed to complete the unexpired term of her late husband on the Clinton County Legislature. Faced with a challenge to her occupation of the two positions, the court concluded that “[hjere, the incompatibility is readily apparent since in her legislative capacity [respondent] will be in a position to vote upon the budget and personnel of the Board of Elections, as well as the salary of the commissioners who are her supervisors and who may remove her at their pleasure” (id. at 953 [emphasis supplied]).
The same situation is involved at bar. In this case it is conceded that the HPD receives some funding from Westches-ter County for one of its programs. That funding is provided as part of the County Budget. As a member of the County Board, respondent would be voting upon the budget, thereby deciding whether, and how much, funding should be awarded to the police department which he supervises. This is precisely the type of conflict of interest that falls within the bar against concurrent occupation of positions, one of which “is subordinate to the other or subject to audit or review by the second” (see, id.).
Seeking to avoid that conclusion, respondent proffers two arguments. First, he asserts that the limited size of the funding to the HPD renders the conflict of interest too insignificant to support a finding of incompatibility. Second, relying upon an informal opinion of the New York State Attorney General in the case of a police officer who was elected to another county legislature, he contends that there is no common-law bar to his holding of the two offices. Neither argument is convincing.
With respect to the size of the funding, at the March 6th oral argument, respondent claimed that the HPD received only approximately $2,000 for its DARE program. In his view, given that the funding is so limited, there can be no conclusion reached that a conflict of interest would be created by his vot *433 ing on the County Budget, notwithstanding that the budget would include some monies directed to the police department of which he is the chief officer.
The difficulty with this argument is facially apparent. As an initial matter, that his department may currently receive only $2,000 annually from the county does not mean that more funds could not be sought by the HPD, at respondent’s request or that of the town’s government. As a member of the County Board, he would be required to cast a ballot to decide whether such additional funding should be awarded. In doing so, he would be exercising the power granted to him as a legislator to determine whether in his alternate role as Police Chief his department should gain a financial benefit. Moreover, in casting that vote, he would be representing the interests of residents of parts of the Sixth District not within the town, who might be of the view that the town’s police department should not receive additional funding. The conflict of interest existing in that situation is obvious, and certainly supports the conclusion that the two positions are incompatible (see, Matter of Dupras v County of Clinton, supra, 213 AD2d at 953).
Even if the amount of funding received by the HPD is, and remains, but $2,000 annually, reliance upon that fact is unavailing. It is not the extent of the HPD’s funding that would be voted upon by respondent as a county legislator that is relevant, but rather the fact that he would have any role in voting upon the issue, that compels the conclusion that the two offices are incompatible. For in this situation, as any other bearing upon the exercise of judgment by the public’s representatives, public officials should “obviate the possibility of any * * * conflict [of interest], to avoid the appearance of any impropriety and to preserve the integrity of the [legislative] board and public confidence in its operations” (see, Town of Ramapo v Watton, supra, 90 Misc 2d at 918). This can only be accomplished in one of two ways, either by refraining from voting upon budget issues or by resigning from one of the two offices.
In certain instances of potential conflict, the officeholder has the option of recusing himself from any matter where a conflict may arise (see, e.g., Matter of Kastoff v New York State Dept. of Social Servs., 195 AD2d 808, 809 [3d Dept 1993] [no bar to serving as both Department of Social Services Hearing Officer and acting Village Justice where it was unlikely that petitioner would be called upon to preside over matters raising conflicts “and, in any event, * * * [he] has the option of rescuing himself from any matter where such a conflict may occur”]). Such an *434 option is unavailable to respondent, who does not deny that, as in Dupras, the County Budget “is established in consideration of the needs of the other County agencies and departments and the resources of the County,” so that he “would have to recuse [himself] from the entire budgetary process to remove any suggestion of conflict of interest or appearance of impropriety” (Matter of Dupras v County of Clinton, supra, 213 AD2d at 953). Just as in Dupras, “[t]his [approach] would be unacceptable since it would deprive [respondent’s] constituents of a voice in a significant aspect of the Legislature’s responsibilities” (see, id.).
Obviously aware of the weakness of his position, the centerpiece of respondent’s defense throughout this proceeding has been his claim that under an informal New York State Attorney General Opinion in another case (1999 Ops Atty Gen No. I 99-1085 [hereinafter Opinion 99-1085]), he may retain the two offices without violating the common-law bar. Analysis of the facts of that opinion makes plain that his reliance upon it is wholly misplaced.
As set forth in Opinion 99-1085, a police officer inquired whether he could, inter alia, hold office as a county legislator for the county in which the city by whom he was employed was located. In concluding that he could do so, the Attorney General observed that he found no state statute that would prevent the concurrent holding of the offices. With respect to the common-law bar, the Attorney General opined that the two offices were not incompatible because they were not subordinate to one another and there was no foreseeable conflict between their duties.
During the oral arguments on the earlier motions and on the merits of the CPLR article 78 petition, as well as in his papers submitted with respect to the motions, respondent has repeatedly invoked Opinion 99-1085 as completely supporting his contention that the two offices he seeks to hold have previously been found to be compatible. Indeed, respondent represented to the court at the March 6th oral argument that someone acting in his behalf had communicated with the Attorney General’s office by telephone to request an opinion as to whether his situation violated the common-law bar. According to respondent, in response to that inquiry he received a copy of Opinion 99-1085 under a cover letter from the Attorney General, although he concedes that no opinion was rendered by the Attorney General as to the facts involved in his situation.
Remarkably, respondent could neither identify the person who purportedly made the inquiry on his behalf nor produce a *435 copy of the Attorney General’s cover letter. In the final analysis, whether or not such an inquiry was actually made by respondent is of no moment, except for political spin purposes, because Opinion 99-1085 is readily distinguishable on its facts.
In the situation described in Opinion 99-1085, the inquiring police officer made no reference to any funding that his county legislature would be providing to his own police department. Thus, the court agrees with the Attorney General’s opinion that under the facts involved therein, there was no foreseeable conflict created by concurrent occupation of the two offices (see, 1999 Op Atty Gen No. I 99-1085, supra; see also, 1994 Op Atty Gen No. I 94-1030, supra).
Here, as conceded by respondent, the situation is to the contrary. As part of his duties as county legislator, respondent will be exercising his authority to vote on funding that provides support to a program administered by him as Chief of Police of the HPD. It is this single factor of having control over some aspect of the budget of the agency in which he holds his second office that renders Opinion 99-1085 entirely without relevance to his case (see, Matter of Dupras v County of Clinton, supra, 213 AD2d at 953; cf., Matter of Dykeman v Symonds, supra, 54 AD2d at 163 [appointed Yates County Motor Vehicle Supervisor barred from concurrently serving on county legislature where, inter alia, that body had authority to fix the salary for county employees such as holder of her other position]).
Thus viewed, it is evident that the two offices that respondent seeks to hold concurrently are incompatible (see, Matter of Dupras v County of Clinton, supra, 213 AD2d at 953). Accordingly, petitioners have prevailed on their common-law cause of action.
B. Statutory Bar
Respondent’s reliance upon Opinion 99-1085 is also misplaced because, by its own terms, it has no application to a situation where a local law controls.[3] Petitioners seize upon this distinction in arguing that Local Law 10 creates a statutory bar to respondent’s effort to retain his two positions.
Under Local Law 10, “A county legislator shall not hold any other salaried or elective public office during his tenure” (West- *436 Chester County Charter § 107.31 [4]; emphasis supplied). Petitioners’ second cause of action raises the question of whether this County Law constitutes a separate ground for concluding that respondent may not retain his position as Police Chief after his election to the County Board.
As an initial matter, the court notes, as it did at the March 6th oral argument, that in his papers on the earlier motions, respondent stated that “although the starting point for evaluating the constitutionality of a local law is that the local law is presumed valid, * * * [he] reserves his right to challenge the constitutionality of this statute facially and as applied to him both under the New York and Federal Constitutions” (Piscionere affirmation, para 40). Notwithstanding this reservation, respondent’s verified answer to the petition did not include any constitutional challenge, and at the March 6th oral argument, respondent conceded that no such attack was being made by him. Given that concession, as relates to the statutory cause of action, this court’s duty is to apply Local Law 10 as written (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 73 [“Where a statute violates no constitutional limitation the only function of the courts is to enforce it”]; see also, Matter of Union Bank of Brooklyn, 96 Misc 299, 322 [Sup Ct, Kings County 1916], revd on other grounds 176 App Div 477 [2d Dept 1917] [same]).
In granting the preliminary injunction to petitioners, this court ruled that as a matter of law, “[respondent’s] Police Chief position is a public office within the meaning of * * * Local Law [10]” (Held v Hall, supra, 190 Misc 2d 444, 455). In this proceeding, petitioners contend that “this determination is conclusive on the issue” (Neale reply affirmation, at 4), thereby resolving this claim in their favor.
Contrary to petitioners’ position, “[t]he granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for” (Walker Mem. Baptist Church v Saunders, 285 NY 462, 474 [1941]). Thus, that this court ruled in petitioners’ favor on the “public office” issue when it granted them interim relief does not support the view that this issue is also determined against respondent on the merits of their CPLR article 78 petition. ■
Turning to the merits of the statutory claim, the court first observes that respondent admits that his position as Police Chief is a “salaried” office. As he further conceded at the March *437 6th oral argument, as Chief of Police he does hold a “public office.” Indeed, although he had argued on the earlier motions there was at least a question of fact as to whether his position as Police Chief of the HPD constituted a public office, that argument was wholly untenable in view of his inability to distinguish the binding authority of this state, cited by this court in the January 29th decision, which has repeatedly held that a police officer holds a public office (see, e.g., Matter of Ryan v City of New York, 228 NY 16, 19 [1920] [in context of police officer’s workers’ compensation claim, held that “(h)is occupation was that of a patrolman, and his position a public office”]; see also, Canteline v McClellan, 282 NY 166, 170 [1940] [in determining issue related to refusal by police officer plaintiffs to waive grand jury immunity, Court held “(t)hat the plaintiffs are public officers there is no doubt”]).[4]
Thus, it is hardly surprising that respondent, having abandoned his effort to create a factual issue out of the meaning of the term “public office” as used in Local Law 10, now argues that it is a term which requires “judicial interpretation.” In his view, the only interpretation possible is that as intended by Local Law 10, his Police Chief position does not come within the definition of a public office.
“ ‘Interpretation’ [of a statute], strictly speaking, is limited to an exploration of the written text” (McKinney’s Cons Laws of NY, Book 1, Statutes § 71; Bromley v Mollnar, 179 Misc 713, 716 [Erie County Ct 1942]). To be contrasted with “interpretation” is “construction,” which goes beyond interpretation and “includes the use of extrinsic considerations beyond the words of the statute” (see, Bromley v Mollnar, supra, 179 Misc at 716). In this case, respondent actually asks this court to engage in statutory construction, since at the March 6th oral argument, he took the position that the intent of the county legislature in enacting Local Law 10 should be determined by reference to what he repeatedly characterized as the “spirit” of the law. According to respondent, this “spirit” is evidenced by the legislative history of Local Law 10, and reflects the intention that the statutory bar applies only to “two-hat” elected leaders, i.e., officials elected to two separate governing bodies or holding office as an elected representative and an elected ex *438 ecutive officer. Respondent’s position is contrary to both controlling rules of statutory construction and the legislative history upon which he relies.
It is well established that “no rule of construction gives the court discretion to declare the intent of the law when the words are unequivocal” (Bender v Jamaica Hosp., 40 NY2d 560, 562 [1976]). To the contrary, “rules of construction are invoked only when the language used leaves its purpose and intent uncertain or questionable” (People ex rel. New York Cent. & Hudson Riv. R.R. Co. v Woodbury, 208 NY 421, 425 [1913]). Indeed, as has been recognized, “[t]o interpret, where there is no need for interpretation; to conjecture about, or to add to, or to subtract from words having a definite and precise meaning; to engraft exceptions where none exists — are trespasses upon legislative domain” (see, Bryant Park Bldg. v Frutkin, 10 Misc 2d 198, 202 [NY City Mun Ct 1957] [citations omitted]).
In this case, there is no uncertainty about the language employed by the county legislature in its enactment of Local Law 10. That law bars concurrent holding of a seat on that legislative body and “any other salaried or elective public office.” (Westchester County Charter § 107.31 [4].) The term that respondent argues is without definite meaning, i.e., “public office,” is one which is well known to courts and legislatures alike.. It has been used in judicial decisions dating 80 years prior to the enactment of the local law at issue (see, e.g., People ex rel. Sherwood v State Bd. of Canvassers, 129 NY 360, 366 [1891]). Similarly, it appears as part of this state’s current Public Officers Law, which is derived from the Public Officers Law of 1892 (see, Public Officers Law § 2).
The meaning given to that term is hardly new, and was well established in the common law of this state in 1970, when Local Law 10 was enacted (see, e.g., People ex rel. Corkhill v McAdoo, 98 App Div 312, 314 [2d Dept 1904] [“The essential element in a public office is that the duties to be performed shall involve the exercise of some portion of the sovereign power, whether great or small”]; see also, People ex rel. Hoefle v Cahill, 188 NY 489, 494 [1907] [same]). Consequently, the court discerns no reason why the term should not be afforded its “natural and ordinary sense” (see, Smith v People, 47 NY 330, 337 [1872]; see also, Perkins v Smith, 116 NY 441, 448-449 [1889] [“Words having a precise and well settled meaning in the jurisprudence of a country are to be understood in the same sense when used in its statutes, unless a different meaning is unmistakably intended”]). Here, since it is not “plain from the *439 [local law] that a different meaning [was] intended,” this court must give the term its “usual and ordinary meaning” (see, Regan v Heimbach, 91 AD2d 71, 72 [3d Dept 1983], lv denied 58 NY2d 610 [1983], rearg denied 59 NY2d 969 [1983]), which compels the conclusion that respondent’s paid position as Police Chief of the HPD is a “public office” (see, Matter of Ryan v City of New York, supra, 228 NY at 19; see also, Matter of Pauley v Noeppel, supra, 1 Misc 2d at 931 [for purposes of statute providing for vacatur of public office upon conviction of felony or crime involving violation of oath of office, deputy police commissioner in city police department is “public officer”]).
Moreover, even if the court accepted respondent’s invitation to engage in statutory construction, the same conclusion would follow. That this view is warranted is evident from a consideration of other language employed by the County Board as well as a reading of the brief legislative history culminating in the enactment of Local Law 10.
Although not addressed by the parties, the County Board has utilized various terms related to public employment and public officers throughout the County Charter. For example, under Westchester County Charter § 107.21 the County Board has the power to provide “for the compensation of appointive officers and employees” (Westchester County Charter § 107.21 [3] [emphasis supplied]), “for the creation of offices other than those required by the constitution and laws of the state” (West-chester County Charter § 107.21 [5] [emphasis supplied]), and “for officers hereafter created by law or for the allocation of their duties to existing officers” (Westchester County Charter § 107.21 [6] [emphasis supplied]), as well as to “[f]ix the amount of all bonds and approve the sureties of all county elective and appointive officers and county employees” (Westchester County Charter § 107.21 [8] [emphasis supplied]). Similarly, in establishing a County Board of Ethics, the County Board provided, in relevant part, that the majority of the seven members “shall not be officers or employees of the county or municipalities” (Westchester County Charter § 192.11 [emphasis supplied]).
By using terms such as elective officer, appointive officer, county employee, municipal employee, office and officer, the County Board has demonstrated its understanding that different meanings are applicable to different types of public employment and office holding. Consequently, the court cannot agree with respondent that in using the term “public office,” the County Board intended a meaning that is in some way limited *440 to holders of offices such as local legislators or executives. Indeed, since such a limitation is not expressed, acceptance of the interpretation urged by respondent would be in derogation of the County Board’s expressed intent that “[a] 11 words and phrases contained in [the Westchester County Charter] are used according to their accepted and ordinary meaning except where another meaning is specifically indicated or manifest” (Westchester County Charter § 201.11 [2] [emphasis supplied]).
Moreover, application of the local law as argued by respondent would violate established rules of statutory interpretation and construction, by assuming that the County Board “deliberately place [d] in [Local Law 10] a phrase which was intended to serve no purpose” (see, People v Dethloff, 283 NY 309, 315 [1940]), or by creating an exception to the language employed which the County Board “could easily have expressed but did not” (see, People v Shafer, 30 AD2d 213, 216 [4th Dept 1968]). Rather than constituting statutory interpretation, as respondent contends, the course he urges upon this court would constitute improper judicial legislation, a power not possessed by the courts, and one which this court shall not attempt to exercise (see, Matter of Metropolitan Life Ins. Co. v Boland, 281 NY 357, 361 [1939] [“We are not privileged, by judicial construction, to legislate”]).
No different result follows from a review of the legislative history of Local Law 10. To the extent that this history is offered, it is comprised of the submissions of petitioners in support of their earlier motion for a preliminary injunction, which submissions were adopted by respondent at the March 6th oral argument. There, seizing upon the phrase “two-hat member” that appeared in a 1970 newspaper account of the process leading to the passage of the local law, respondent argued that the “spirit” of Local Law 10 was that it was intended to bar the holder of one governing office, such as a town or village board member or executive, from concurrently holding office as a county legislator, but has no application to the holder of a public office such as a police chief.
As is evident from petitioners’ exhibits, the original proposal for Local Law 10, put forth at a legislative session on August 3, 1970, provided that “A county legislator shall not hold any other salaried elective office during his tenure” (Neale reply affirmation, Jan. 19, 2002, exhibit D, at 4 [emphasis supplied]). As reported by the County Board’s Committee on Legislation, following a public hearing at which “several suggestions were presented by the League of Women Voters,” the committee “ar *441 rived at the conclusion that there is one change which should be made in the proposed local law” (id. at 6). Specifically, that committee offered the proposal that Local Law 10 should read that “A county legislator shall not hold any other salaried or elective public office during his tenure” (id.). Notably, the committee acknowledged that this was “rather a material change in the proposed law” (id.). After the holding of another public hearing, and specifically on November 2, 1970, Local Law 10 was enacted in its present form.
It was in response to the change as proposed by the League of Women Voters of Westchester that a local newspaper, the Reporter Dispatch, published a brief article on October 6, 1970, under the headline “County Board Bans ‘Two-Hat’ Members” (id., exhibit E). In respondent’s view, this article and the aforesaid history provide support for his conclusion that despite the plain meaning of the term “public office” as employed in Local Law 10, that law is without application to his situation. This court does not agree.
Beginning with the first proposal for the local law, it is clear that the legislature intended to prohibit any of its members from also holding another paid, elected position. Certainly, if enacted in that form, the local law would not have created any bar to concurrent holding of a county legislative seat and any appointed public office, such as police chief of a local law enforcement agency.
The development of the local law did not, however, stop at that point. Instead, adopting the suggestions of the League of Women Voters, the County Board went substantially further, and included in its ban not just salaried elective officeholders, but all salaried or elected public officeholders. By making this change, the County Board expanded the reach of the law to all public officers who were either elected or salaried, a difference that they recognized as being “material.” In adopting this greater scope for its ban on concurrent office holding, the County Board made clear that rather than limiting its reach to those who held two governing positions, the local law was to impact upon the holder of any public office who was either salaried, or elected to a compensated or uncompensated position. As is now apparent, the reach of the final version of Local Law 10 includes public officers such as a salaried chief of police. Thus, respondent’s claim that only “two-hat” legislators were intended to be affected by Local Law 10 is without support in the legislative history, and is rejected by this court.
Seeking some refuge from this conclusion, respondent argues that certain other County Board members occupy positions *442 that he seeks to compare to his. Among those is one who serves as a guidance counselor with a local school district. In respondent’s view, the fact that others employed by agencies that may receive funding from the county are permitted to serve on the County Board leads to the conclusion that he too is exempt from Local Law 10.
Putting aside the fact that this point, raised for the first time at the March 6th oral argument, was not supported by any factual detail, it is nonetheless abundantly plain that it confuses the position of “public employee” with that of “public officer.” It may very well be true that one or more County Board members are also employed by the county or one of its municipalities in other positions. But that fact is not of controlling significance to the issue before this court.
As has been recognized:
“The holder of a public office is in the employment of the public, but all those who are in the public employment are not public officials and do not hold public office. The duties of a public official involve some exercise of sovereign power — those of a public employee do not. The one has independent official status; the other has rights under a contract of employment.” (People ex rel. Dawson v Knox, 231 App Div 490, 492 [3d Dept 1931], affd 267 NY 565 [1935] [emphasis supplied]; see also, People ex rel. Hoefle v Cahill, supra, 188 NY at 494.)
Based upon this distinction, there are many positions of public employment which have been found not to constitute public offices, including sanitation worker (Matter of DePaolo v Bronstein, 45 AD2d 691, 692 [1st Dept 1974], lv denied 35 NY2d 642 [1974]), administrator of a county Civil Service Employees’ Association benefit fund (People v Confoy, 110 Misc 2d 252, 259 [Sup Ct, Suffolk County 1981]), automobile facilities inspector, motor vehicle inspector or investigator and motor vehicle license examiner with the State Department of Motor Vehicles (Matter of County of Suffolk v State of New York, 138 AD2d 815, 817 [3d Dept 1988], affd 73 NY2d 838 [1988]), and executive director of a housing authority (Matter of Lake v Binghamton Hous. Auth., 130 AD2d 913, 914 [3d Dept 1987]), to name but a few.
Application of the definitions of “public employment” and “public office” to the situations of the other County Board members referred to by respondent may give rise to the conclusion that they are merely public employees. Thus, the fact that *443 certain other board members may hold public employment provides no support for respondent’s contention that Local Law 10 was not intended to apply to his second position, which constitutes not merely public employment, but a public office.
There being no basis for not applying Local Law 10 as written, the court need look no further than to the concession that the police chief position is salaried and to the legal conclusion that it is a public office. Upon those facts, it is beyond credible dispute that by retaining the police chief position while serving on the County Board, respondent is in violation of Local Law 10. Thus, petitioners have proven their statutory cause of action (see, Matter of Dykeman v Symonds, supra, 54 AD2d at 164).
IV. Remedies
In view of the determination that petitioners have prevailed on both of their claims, they are entitled to relief designed to address the conflict created by respondent’s effort to concurrently retain his two offices. What is unusual about this case is that the remedy to which petitioners are entitled on their statutory cause of action is rendered academic by operation of law with respect to their common-law claim.
As set forth in their initial pleading, petitioners seek a judgment from this court declaring the rights and relations of the parties to this proceeding with respect to whether Local Law 10 or the common-law doctrine of incompatibility prohibits respondent from serving on the County Board while he holds the salaried public office of Police Chief of the HPD. On the assumption that such a prohibition applies to respondent, petitioners ask that the court:
“declare, order and adjudge that, by operation of law, the office of the Member of the Westchester County Board of Legislators representing District 6 has become vacant; and, that the vacancy shall be deemed to have occurred on the date of the entry of a final judgment in this [proceeding]; and, the vacancy in the office of Member of the County Board representing District 6 shall be filled in accordance with the applicable provisions of the County Charter[.]” (Petition at 7.)
As further refined in their reply papers, petitioners’ request is for “this Court to fashion an equitable remedy that would be reasonable and appropriate in all the circumstances of this proceeding” (Neale reply affirmation, Mar. 2, 2002, at 4-5). In *444 its final formulation, as expressed at the March 6th oral argument, petitioners’ application was for an order directing that respondent make an election within seven days of which office he intends to retain.
Insofar as relates to the statutory cause of action, compelling respondent to make such a choice is entirely appropriate. Under Local Law 10, respondent is barred from holding his Police Chief position during his tenure on the County Board. Since, as a matter of law, he cannot hold both positions concurrently, the only available option is for him to choose which position he shall retain, and which he shall resign (see, Matter of Dykeman v Symonds, supra, 54 AD2d at 164 [county legislator whose concurrent employment by county violated statute ordered to resign from position as motor vehicle supervisor if she wished to retain legislative position]). An appropriate judgment may be entered which would ensure that he made that choice, failing which, in effect, the court would make it for him (see, id.; see also, Matter of Dupras v County of Clinton, supra, 213 AD2d at 954 [upon finding of holding of incompatible offices, county legislator properly directed to resign from one of them]).
Here, although an appropriate remedy would have been an order directing respondent, within 15 days, to choose which of the two offices he intends to retain, in fact, no further court intervention is necessary. Rather, by his own actions, respondent has provided the relief sought by petitioners.
Although not addressed by either side of this litigation, whether for tactical reasons or otherwise, the law governing the consequence of incompatible office holding has been established in New York since at least 1874, when our state’s highest court declared that when incompatibility exists, “one office is ipso facto vacated by accepting another” (People ex rel. Ryan v Green, supra, 58 NY at 304). As further explained almost 60 years ago in Matter of Smith v Dillon (267 App Div 39, 43):
“It is a well-settled rule of the common law that a public officer cannot hold two incompatible offices at the same time. The rule is founded upon the plainest principles of public policy. It is embedded in the common law and has obtained from very early times. At common law and under constitutional and statutory prohibitions against the holding of incompatible offices, a person who accepts and qualifies for a second and incompatible office is *445 generally held to vacate, or by implication resign, the first office, so that no judicial proceedings are necessary to determine the title. The successor may at once be elected or appointed.” (Emphasis supplied.)
This principle, that a resignation by implication arises from qualification for and acceptance of a second, incompatible office, has been consistently recognized (see, People ex rel. Sulzer v Sohmer, 211 NY 565, 566 [1914]; see also, Matter of Dykeman v Symonds, supra, 54 AD2d at 163-164) and applied (see, Knauf v County Legislature of County of Monroe, 27 AD2d 440, 441-442 [4th Dept 1967] [upon accepting and qualifying for office of county legislator, plaintiff thereby vacated incompatible office of town supervisor]; see also, Town of Ramapo v Watton, supra, 90 Misc 2d at 918 [member of Village Board of Assessment Review deemed to have vacated position on board upon his election to incompatible office as village trustee]; Matter of Fauci v Lee, 38 Misc 2d 564, 567 [Sup Ct, Broome County 1963], affd 19 AD2d 777 [3d Dept 1963] [police justice vacated that office upon acceptance of office as Judge of Family Court]).
In this case, based upon the determination that the two offices sought to be held by respondent are incompatible, respondent has vacated his position as Police Chief of the HPD. The only remaining question, which is easily resolved, is on what date that vacatur occurred.
As explained in Matter of Smith v Dillon, the officeholder vacates, or by implication, resigns, from his first position when he “accepts and qualifies for [the] second and incompatible office” (supra, 267 App Div at 43). An individual may accept a second office by entering upon the performance of the duties of that office (People ex rel. Sulzer v Sohmer, supra, 211 NY at 566), or “by less than an official act, such as taking the oath of office” (Matter of Fauci v Lee, supra, 38 Misc 2d at 570).
At bar, both forms of acceptance have occurred. Thus, as he admits, respondent filed his oath of office as a county legislator on December 3, 2001. He then began performing the duties of a county legislator, which have included all aspects of representation except for voting, from which he has been barred by the preliminary injunction entered by this court. Beyond all doubt, as of December 3, 2001 he resigned by implication and vacated his position as Police Chief of the HPD (see, Matter of Smith v Dillon, supra, 267 App Div at 43; see also, Matter of Fauci v Lee, supra, 38 Misc 2d at 571). Consequently, since that time there has been no dual office holding on his part, and he has *446 been eligible to fully represent the Sixth District (see, Knauf v County Legislature of County of Monroe, supra, 27 AD2d at 441-442 [upon finding that plaintiff accepted and qualified for county legislator office on January 3, 1967, thereby vacating incompatible office of town supervisor, judgment entered declaring that from that date office of supervisor became vacant, that plaintiff was eligible to hold office of county legislator, that he was ineligible to hold supervisor’s office, and that a successor could at once be appointed to fill the vacancy]). That being the situation, no relief is warranted on petitioners’ common-law cause of action beyond adjudications related to the vacatur of respondent’s office of Police Chief and his eligibility to serve as a county legislator.
V. Conclusion
This proceeding commenced as a challenge to respondent’s attempt to serve on the County Board while retaining his position as Chief of Police of the Town/Village of Harrison. As originally framed by the parties on the earlier motion practice, the central issue was whether respondent should be permitted to exercise all of the powers of a county legislator, including most importantly, his voting power, in the face of a compelling showing that his effort to retain the two positions was a violation of Local Law 10. It was solely within that context that this court agreed with petitioners that pending the final outcome of this proceeding, respondent should be enjoined from exercising his voting authority.
If the parties had been more forthright in their positions, the issue presented on the preliminary injunction motion would have been whether respondent should be barred from voting where it appeared that he held incompatible offices. Had the issue been framed in that manner, this court would have been in a position to consider the effect of the implied resignation doctrine on the application for a preliminary injunction which, when granted, denied respondent the authority to vote as a member of the County Board pending the resolution of this proceeding.
Obviously, respondent had no legal incentive to suggest that the court address the issue of incompatibility on the earlier motions, since the result would have been the same conclusion, more than six weeks earlier, that he had already surrendered his position as Police Chief. It could certainly be argued, however, that he owed his constituents a duty to at least acknowledge the effect of the general rule concerning implied *447 resignation, as a means of attempting to secure for them the full benefit of their right to be represented in their county legislature. By placing his own interest in retaining both of his positions for the longest possible time ahead of theirs, he thereby deprived them of that right of representation which reflects the political power of the people (see, Ku Klux Cases, supra, 110 US at 666).
So too could it be viewed that petitioners limited their earlier approach with a primarily political, and not legal, goal in mind. In this regard, it would be naive not to consider, as suggested by respondent at the oral argument on the earlier motions, that in basing their preliminary injunction motion upon their statutory claim, petitioners hoped to obtain relief that would cause respondent to choose to retain his Police Chief position, and thereby open up the Sixth District legislative seat to another election.
Whatever the motivations were that have driven these parties, in the end, respondent’s creation of a legislative mini-crisis by seeking to retain two offices in violation of both the common law and Local Law 10 ironically provided its own resolution more than three months ago. Having qualified for and accepted his seat on the County Board, a position incompatible with his public office as Police Chief of the HPD, respondent resigned the latter office by implication, and rendered it vacated, as of December 3, 2001 (see, Matter of Smith v Dillon, supra, 267 App Div at 43). Accordingly, there is no bar to him exercising all powers of a county legislator, and he may fully represent the people of the Sixth District for the balance of his elected term (see, Knauf v County Legislature of County of Monroe, supra, 27 AD2d at 441-442).
Wherefore, it is adjudged and declared that effective December 3, 2001 respondent resigned from his position as Chief of Police of the Town/Village of Harrison Police Department; and it is further adjudged and declared that effective December 3, 2001 there has been a vacancy in the position of Chief of Police of the Town/Village of Harrison Police Department; and it is further adjudged, declared and ordered that effective December 3, 2001 respondent has been eligible to hold the position of county legislator representing the Sixth District on the Westchester County Board of Legislators; and it is further adjudged, declared and ordered that effective December 3, 2001 respondent has been eligible to exercise all powers conferred upon a county legislator on the Westchester County Board of Legislators; and it is further ordered that the prelim *448 inary injunction entered in this proceeding on January 29, 2002 is vacated in all respects.

. The DARE program is designed to educate youth concerning the adverse effects of, inter alia, substance abuse, in an effort to encourage them to refrain from engaging in that and other forms of harmful conduct.

. Notwithstanding that no papers were presented except for the two-page verified answer, in the exercise of its discretion the court permitted defendant to present factual and legal arguments that were not put forth in any other paper. In view of the fact that the additional factual and legal claims were not unexpected, and given the determination rendered herein, it is evident that petitioners’ position was not prejudiced in any manner by the court’s approach.

. As acknowledged by the Attorney General in Opinion 99-1085, “It should be noted that, while this opinion has reached certain conclusions under State law, it has not considered the provisions of any local laws or codes of ethics, or any collective bargaining agreements, which may apply” (1999 Ops Atty Gen No. I 99-1085, supra, *3 [emphasis supplied]).

. Other cases relied upon by the court in reaching its conclusion were Matter of Hodgson v McGuire (75 AD2d 763 [1st Dept 1980]), Ferraro v City School Dist. of City of Schenectady (69 Misc 2d 800, 801-802 [Sup Ct, Schenectady County 1972]), and Matter of Pauley v Noeppel (1 Misc 2d 928, 931 [Sup Ct, Erie County 1953]).